UNITED STATES of America, Plaintiff-Appellant Cross-Appellee,

v.

Robert DiBERNARDO, Theodore Rothstein, Defendants-Appellees, Cross-Appellants.

No. 83–5295.

United States Court of Appeals, Eleventh Circuit.

Nov. 13, 1985.

be interpreted to suggest a "bribe" or "inducement."

Robert Lehner, Jr., Asst. U.S. Atty., Miami, Fla., William C. Bryson, Washington, D.C., for plaintiff-appellant cross-appellee.

Herald Price Fahringer, New York City, for DiBernardo.

Ralph J. Schwarz, Jr., New York City, for Rothstein.

Before TJOFLAT and VANCE, Circuit Judges, and ATKINS *, District Judge.

TJOFLAT, Circuit Judge:

This appeal presents the question of whether, in the absence of an abuse of the grand jury process, a district court may exercise its supervisory power to dismiss an indictment where (1) the grand jury may have heard false testimony or (2) the prosecutor, in advising the grand jury at the end

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

of its investigation, failed to instruct it to disregard prejudicial evidence irrelevant to the offense eventually alleged in the indictment. The district court dismissed the indictment. We reverse.

## I.

In the summer of 1977, the FBI commenced operation "Miporn," an undercover investigation of the obscenity industry. Posing as pornographers, Special Agents Patrick Livingston and Bruce Ellavsky contacted distributors of pornography throughout the United States ordering sexually explicit magazines, films, and videotapes and arranging to have the merchandise shipped to them in Miami, Florida. After a two-year investigation, the Government presented its case to a grand jury sitting in the Southern District of Florida. Special Agents Livingston and Ellavsky testified extensively about their transactions with the distributors. These witnesses and others who testified before the grand jury described the pornography industry as a tight-knit group, one in which the distributors were well acquainted with one another and were highly suspicious of strangers who attempted to do business with them. The distributors rigidly enforced rules against unauthorized duplication of their videotapes, often resorting to threats and violence. Agent Livingston testified that some of the distributors were members of organized crime families and that the pornography industry was controlled by the "Mafia."

On February 12, 1980, the grand jury returned an eighteen-count indictment (the original indictment) against forty-five defendants, including appellees Robert DiBernardo and Theodore Rothstein. Count one charged the defendants with engaging in a nationwide conspiracy to transport obscene materials in interstate commerce in violation of 18 U.S.C. §§ 371 [1] and 1465 [2] (1982). The remaining seventeen counts of the indictment charged small groups of defendants with substantive violations of section 1465. After this indictment was returned, the Government apparently concluded that insufficient admissible evidence existed to establish the conspiracy offense alleged in count one. The Government, therefore, dismissed the indictment, pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure,[3] and re-presented the case to the grand jury.

On October 15, 1980, the grand jury returned sixteen superseding indictments

---

1. 18 U.S.C. § 371 (1982) provides in pertinent part:
 ### § 371. Conspiracy to commit offense or to defraud United States
 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. 18 U.S.C. § 1465 (1982) provides:
 ### § 1465. Transportation of obscene matters for sale or distribution
 Whoever knowingly transports in interstate or foreign commerce for the purpose of sale or distribution any obscene, lewd, lascivious, or filthy book, pamphlet, picture, film, paper, letter, writing, print, silhouette, drawing, figure, image, cast, phonograph recording, electrical transcription or other article capable of producing sound or any other matter of indecent or immoral character, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

 The transportation as aforesaid of two or more copies of any publication or two or more of any article of the character described above, or a combined total of five such publications and articles, shall create a presumption that such publications or articles are intended for sale or distribution, but such presumption shall be rebuttable.
 When any person is convicted of a violation of this Act, the court in its judgment of conviction may, in addition to the penalty prescribed, order the confiscation and disposal of such items described herein which were found in the possession or under the immediate control of such person at the time of his arrest.

3. Fed.R.Crim.P. 48(a) provides for dismissal:
 (a) By Attorney for Government. The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.

which effectively divided the single conspiracy alleged in the original indictment into a series of small unrelated conspiracies. In one of these superseding indictments (the instant indictment), the appellees, together with codefendant Andrew D'Apice, were charged with conspiring to use an express company or common carrier to transport obscene materials in interstate commerce, in violation of 18 U.S.C. §§ 371 and 1462[4] (1982). They were also charged, in six substantive counts, with knowingly using an express company or common carrier to transport obscene materials, in violation of section 1462, and knowingly transporting obscene materials in interstate commerce, in violation of section 1465. The principal factual allegations in the indictment were that D'Apice, as the operator of KED Productions, Inc., sold obscene films and videotapes to the undercover agents and that the appellees, as the true owners of KED, approved all sales of obscene materials and supervised the activities of D'Apice.

After a severance was granted to codefendant D'Apice, the case proceeded to a jury trial against the appellees. They were convicted on all counts, and, after sentencing, they appealed.

On February 12, 1982, during the pendency of their appeals, the prosecutor wrote a letter to all counsel in the Miporn cases to inform them of an unfortunate development in the case: Special Agent Livingston, one of the two undercover agents in the Miporn investigation, had been arrested for shoplifting and, at the time of arrest, had identified himself using his Miporn undercover identification documents. The prosecutor also stated that psychiatric examinations indicated that Livingston had difficulty distinguishing between his real identity and his undercover identity. Following receipt of the prosecutor's letter, the appellees moved the district court alternatively to vacate their convictions and dismiss their indictment with prejudice or to grant them a new trial. The defendants in the fifteen companion cases filed similar motions.[5]

The court consolidated these motions for disposition and convened an evidentiary hearing which focused primarily on Agent Livingston's psychiatric problems. Following the hearing and a review of the testimony heard by the grand jury that returned the original and superseding indictments, the district court, in a memorandum opinion, 552 F.Supp. 1315 (S.D.Fla.1982), found that the superseding indictments were significantly "tainted" by two factors: (1) the "subsequent behavior and perjurious propensities" of Special Agent Livingston,[6] *id.* at 1324, and (2) the failure of the

---

4. 18 U.S.C. § 1462 (1982) provides:

 **§ 1462. Importation or transportation of obscene matters**

 Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce—

 (a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character; or

 (b) any obscene, lewd, lascivious, or filthy phonograph recording, electrical transcription, or other article or thing capable of producing sound; or

 (c) any drug, medicine, article, or thing designed, adapted, or intended for producing abortion, or for any indecent or immoral use; or any written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly or indirectly, where, how, or of whom, or by what means any of such mentioned articles, matters, or things may be obtained or made; or

 Whoever knowingly takes from such express company or other common carrier any matter or thing the carriage of which is herein made unlawful—

 Shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter.

5. At the time of the prosecutor's letter, three of the companion cases had proceeded to trial, resulting in one acquittal and two convictions. The convicted defendants in these cases made motions paralleling the motions made by appellees. The defendants in the twelve superseding indictments that had not proceeded to trial moved the district court for dismissal of their indictments with prejudice.

6. The district court did not find that Livingston committed perjury in his testimony before the

prosecutor to instruct the grand jury returning the superseding indictments to "disregard the evidence related to organized crime connections and violent activities of other individuals, and additional irrelevant evidence unrelated to the separate defendants involved in the individual conspiracies." *Id.* at 1325. Based on these findings, the district court, in an exercise of its supervisory power over the administration of criminal justice in the Southern District of Florida, dismissed without prejudice the superseding indictments in the twelve Miporn cases that had not proceeded to trial. The court took no action in the cases that had been tried. The Government immediately moved the court to reconsider its dismissal of the twelve indictments. The court denied the motion in a second memorandum opinion, 561 F.Supp. 783 (S.D.Fla.1983). In that opinion, the court addressed the instant case, which was still on appeal, instructing the Government to show cause why its indictment should not be dismissed. After the Government responded, the district court requested this court to remand the case so that the indictment could be dismissed. We honored the district court's request,

and, on June 27, 1983, the district court, following the rationale of its two memorandum opinions, vacated appellees' convictions and dismissed their indictment without prejudice.[7] The Government now appeals from this disposition.[8]

## II.

The single issue presented by this appeal is whether the dismissal of the indictment against the appellees was a proper exercise of the district court's supervisory power. The district court based its dismissal upon the combined effect of two unrelated factors: (1) the questionable credibility of Special Agent Livingston at the time he testified before the grand jury, and (2) the failure of the prosecutor to instruct the grand jury, when it was considering the superseding indictments, to disregard certain irrelevant prejudicial evidence. We conclude, as did the district court, that neither factor standing alone provided a legally sufficient ground for invoking the district court's supervisory power. Unlike the district court, however, we find that the two factors, being unrelated, could not have had a combined effect which warrant-

---

grand jury. The court, however, did make the following finding:

> Although Special Agent Livingston's lies and indiscretions have been limited to the issues framed regarding the shoplifting event, the Court finds from the evidence that he has a great propensity to lie. This Court makes the sad but inevitable conclusion based on the evidence and its personal observation that at present, Patrick J. Livingston would lie when the truth would serve him best.

552 F.Supp. at 1323.

7. The court did not rule on appellees' alternative motions for a new trial, but implied that they would be entitled to such relief if its order dismissing the indictment were reversed on appeal. 561 F.Supp. at 786.

8. This court's jurisdiction is based on the narrow statutory grant of the Criminal Appeals Act, 18 U.S.C. § 3731 (1982), which provides in part:

> In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, ex-

cept that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

Appellees desire to cross-appeal the district court's denial of their motion to dismiss the indictment with prejudice. It is well settled that no independent jurisdictional basis exists for appellees' cross-appeal. *See Parr v. United States,* 351 U.S. 513, 518, 76 S.Ct. 912, 916, 100 L.Ed. 1377 (1956) (dismissal of an indictment without prejudice is not appealable because it is not a final order); *United States v. Martin,* 682 F.2d 506, 507 (5th Cir.), *cert. denied,* 459 U.S. 1088, 103 S.Ct. 573, 74 L.Ed.2d 934 (1982); *United States v. Arzate,* 545 F.2d 481 (5th Cir.1977); *United States v. Moller-Butcher,* 723 F.2d 189, 190 (1st Cir.1983). It is also clear that this court is without pendent jurisdiction over appellees' cross-appeal. *See United States v. MacDonald,* 435 U.S. 850, 857 n. 6, 98 S.Ct. 1547, 1551 n. 6, 56 L.Ed.2d 18 (1978) ("a federal court of appeals is without pendent jurisdiction over otherwise nonappealable claims even though they are joined with a ... claim over which the appellate court does have interlocutory appellate jurisdiction"); *see also Abney v. United States,* 431 U.S. 651, 662–63, 97 S.Ct. 2034, 2042, 52 L.Ed.2d 651 (1977). This court, therefore, has no jurisdiction to decide appellees' cross-appeal.

ed the exercise of such power. This finding follows inexorably from an analysis of the two factors. We turn therefore to a consideration of each factor.

### A.

■ The appellees' superseding indictment was based in part on the testimony of Agent Livingston. Although the district court did not find that Livingston perjured himself before the grand jury or at trial, it did find evidence which tended to "indicate that Agent Livingston's [psychological] problem in all likelihood existed at the time of the presentation of this case to the grand jury." 561 F.Supp. at 786. The possibility therefore existed that Livingston may have testified falsely before the grand jury. We hold that, absent proof of government misconduct, the fact that Agent Livingston may have inadvertently given false testimony to the grand jury did not justify the dismissal of the indictment under the court's supervisory power.

In *United States v. Pabian,* we recognized that "[a]lthough the federal judiciary exercises a supervisory role over federal grand juries, that role must be informed by a recognition that dismissal of an indictment ... is an 'extreme sanction which should be infrequently utilized.'" 704 F.2d 1533, 1536 (11th Cir.1983) (quoting *United States v. Owen,* 580 F.2d 365, 367 (9th Cir.1978)). This court has indicated that the possibility that a witness may have given false testimony before the grand jury does not automatically vitiate an indictment based on that testimony; to dismiss an indictment the district court must also find an abuse of the grand jury process such as perjury or government misconduct. *See United States v. Hyder,* 732 F.2d 841, 845

(11th Cir.1984); *United States v. Sullivan,* 578 F.2d 121, 124 (5th Cir.1978)[9] (refusing to "adopt the proposition that, absent perjury or government misconduct, an indictment is flawed simply because it is based on testimony that later may prove questionable"); *see also United States v. Cathey,* 591 F.2d 268, 271–72 (5th Cir.1979) (holding that absent a finding that perjury was committed, there was no basis for dismissing the indictment).

In the instant case there was no indication that the prosecutor intentionally placed false testimony before the grand jury; the district court expressly noted in both opinions that it found no intentional misconduct on his part.[10] Similarly, the court was unable to find that Agent Livingston's testimony before the grand jury was perjured.[11] In short, the district court found no abuse of the grand jury process; all that it found was that Agent Livingston might have testified falsely. Appellees contend that this latter finding provided the district court with an adequate basis for invoking its supervisory power. They ask us to disregard the rationale of *Sullivan* and the other cases cited above, which seem to foreclose their contention, arguing that the precise issue before us was not litigated in those cases. Assuming, for sake of argument, that the issue is still open, we reject the proposition appellees advance, that, absent a deliberate abuse of the grand jury process, a district court can dismiss a grand jury indictment in the exercise of its supervisory power.

■ Federal courts may exercise their supervisory powers to remedy violations of recognized rights, to protect the integrity

**9.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**10.** The district court found no intentional misconduct on the part of the prosecutor in its first opinion. The court stated that "the unusual turn of events referencing Special Agent Livingston may very well have produced an appearance of impropriety on the part of the prosecutor which in fact simply may not have existed."

552 F.Supp. 1315, 1328 (S.D.Fla.1982). In its second opinion the district court stated: "There are those who would seek to read this Court's opinion (552 F.Supp. 1315) as a finding of fault by this Court of the actions of the prosecutor before the grand jury. Such is not the case." 561 F.Supp. 783, 786 (S.D.Fla.1983).

**11.** Given the psychological problems Livingston was experiencing, it is probable that he could not have possessed the requisite criminal intent to commit perjury.

of the federal courts, and to deter illegal conduct by government officials. *United States v. Hasting,* 461 U.S. 499, 505, 103 S.Ct. 1974, 1978–79, 76 L.Ed.2d 96 (1983). None of these purposes would be furthered by the rule appellees would have us fashion in this case. Under such a rule, the accused would not have to prove that the witness committed perjury or that the government knew that the testimony was false; all the accused would have to show is that the witness' testimony in whole or in part was false. Thus, the accused could obtain a dismissal of his indictment even if the false testimony addressed a collateral issue and could not have affected the grand jury's decision to indict.[12]

The implementation of this rule would also present serious practical problems. First, the district courts would have to assess the credibility of grand jury witnesses. This is the grand jury's responsibility, and to allow a district judge to second guess its judgment on credibility "would seriously infringe upon the traditional independence of the grand jury." *United States v. Guillette,* 547 F.2d 743, 753 (2d Cir.1976), *cert. denied,* 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977).[13] Second, the rule would invite a grand jury challenge in every case,[14] creating substantial delays in the administration of the criminal justice system. No good reason has been advanced as to why we should accommodate such challenges under these circumstances. The rule appellees urge is not necessary to protect innocent persons from being convicted on false testimony. At trial, the government has the burden of proving the allegations of the grand jury's indictment beyond a reasonable doubt, and any witness who inadvertently may have

testified falsely before the grand jury must withstand cross-examination.

If the precedent we have cited has not rejected appellees' position on this issue, we do so now. We hold that the possibility that Special Agent Livingston testified falsely provided the district court with no ground for the exercise of its supervisory power. Thus, to sustain the dismissal of appellees' indictment we must find some other basis for the use of that power.

### B.

The second factor assigned by the district court as a basis for dismissing the indictment was the failure of the prosecutor to instruct the grand jury to disregard evidence that supported the allegations of the original indictment but had no bearing on the allegations of the instant indictment. In the court's view, this evidence was not only irrelevant but also prejudicial. A review of the historical functions of the grand jury, however, indicates that, absent an abuse of the grand jury process, the fact that the grand jury during the course of an investigation may have received evidence not relevant to the allegations of the indictment it eventually returns cannot justify the dismissal of such indictment.

A grand jury performs two basic functions: (1) the determination of whether there is probable cause to believe a crime has been committed and (2) the protection of citizens against unfounded criminal prosecutions. *Branzburg v. Hayes,* 408 U.S. 665, 686–87, 92 S.Ct. 2646, 2659, 33 L.Ed.2d 626 (1972). To perform these functions, the grand jury has been granted wide powers to inquire into violations of

---

12. We recognize that the district court's opinion does not necessarily require the dismissal of an indictment where innocently given false testimony went to a collateral issue and did not unduly prejudice the accused. Even if a *de minimis* approach is taken, however, a district court would be forced to examine the evidence presented to the grand jury, thus raising the practical problems noted in the text which follows.

13. For a discussion of the historical role of the grand jury, see *United States v. Sells Eng'g, Inc.,*

463 U.S. 418, 421–25, 103 S.Ct. 3133, 3137–38, 77 L.Ed.2d 743 (1983); *United States v. Calandra,* 414 U.S. 338, 342–45, 94 S.Ct. 613, 617–19, 38 L.Ed.2d 561 (1974); *Costello v. United States,* 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956).

14. We make this statement because defense counsel's failure to challenge the indictment would probably result, in the event of a conviction, in the allegation that he did not render his client the effective assistance of counsel required by the sixth amendment.

criminal law. Although it may be guided by the prosecutor, the grand jury alone determines the course of any investigation. *United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). There is no question, as the district court acknowledged, that the grand jury had the authority to investigate the nationwide pornography industry described in the original indictment. In the course of that investigation it was entirely proper for the grand jury to receive evidence that some distributors in the industry had organized crime affiliations and engaged in violence in conducting their business. Once properly before the grand jury, this evidence would not "taint" the proceeding if, for example, the grand jury had decided not to return the original indictment alleging a nationwide conspiracy but instead elected to return several indictments alleging small local conspiracies. As the Supreme Court stated:

> [T]he scope of [the grand jury's] inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning.

*Blair v. United States*, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919) (citation omitted). We see no reason why the challenged evidence should be treated differently merely because the grand jury in the instant case returned the original indictment prior to returning the superseding indictments.

 In sum, if certain evidence is properly before the grand jury, it is of no moment that it is irrelevant to the offense the grand jury eventually alleges in its indictment against the accused. Consequently, standing alone, the presence of such evidence cannot justify the use of the district court's supervisory power. If the court is to exercise its supervisory power, therefore, it must find not only the presence of irrelevant evidence but also an abuse of the grand jury process associated with that evidence, such as inappropriate conduct on the part of the government. In this case, there was no evidence that the prosecutor used the allegedly irrelevant evidence to the appellees' prejudice or otherwise acted in bad faith in presenting their case to the grand jury. In fact, the district court emphasized that the prosecutor acted in good faith. Given the absence of intentional misconduct on the part of the prosecutor, it becomes clear that the district court's conclusion that the prosecutor "abused" the grand jury process was based solely on the notion that an abuse takes place whenever the prosecutor fails to instruct the grand jury to disregard a piece of irrelevant, prejudicial evidence. We decline to treat such failure as an abuse for two reasons.

First, the precedent governing the district court's exercise of its supervisory power requires that the prosecutor's conduct be motivated by bad faith; innocent conduct will not suffice. *United States v. Hyder*, 732 F.2d at 845 ("we decline to exercise our supervisory powers to dismiss the indictment on the ground claimed by appellant of unintentional prosecutorial misconduct in overreaching the grand jury and usurping its independent function"); *United States v. Pabian*, 704 F.2d at 1539 (conduct did not "approach the flagrant or abusive conduct that has led courts to exercise their supervisory power"); *United States v. Kabbaby*, 672 F.2d 857, 863 (11th Cir.1982) (dismissal of indictment not justified absent abuse of grand jury process); *see also United States v. Griffith*, 756 F.2d 1244, 1249 (6th Cir.1985) (dismissal of indictment proper under supervisory power only if there is long-standing prosecutorial misconduct and prejudice to the defendant).

Second, the prosecutorial delay and judicial burden associated with monitoring the prosecutor's duty to deliver limiting instructions would not be justified by the benefit, if any, the accused would derive from a resubmission of his case to the grand jury. The district court's rationale places the prosecutor in a role similar to

that of a trial judge ruling on the admissibility of evidence. Unlike the trial judge who presides over an adversary proceeding and can rely on the parties to object to excludable evidence, the prosecutor, under this rationale, must act on his own initiative, instructing the grand jury to disregard any evidence he believes may not be germane to the charge the grand jury is contemplating. The district judge, in turn, acts as an appellate court, ruling on the necessity for a limiting instruction or on the adequacy of an instruction if one was given. In either event, the district court would be required to review the evidence before the grand jury and, in essence, conduct a "minitrial" with respect to each indictment before the case could proceed to trial. The burden such a procedure would impose upon the judiciary would be overwhelming.

The Supreme Court expressed strong opposition to such minitrials in *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). In that case, the Court held that an indictment could not be challenged on the ground that it was based on inadequate or incompetent evidence. Observing that "before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury," *id.* at 363, 76 S.Ct. at 408–09, the Court concluded: "In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in interminable delay but add nothing to the assurance of a fair trial." *Id.* at 364, 76 S.Ct. at 409. We believe the

Court's reasoning applies equally to the issue of limiting instructions.

We also find that the district court's rationale would necessarily require the prosecutor delivering the instruction and the trial court reviewing the instruction to apply Rule 402 of the Federal Rules of Evidence to the grand jury process [15]—an outcome clearly barred by precedent. *See, e.g., United States v. Calandra*, 414 U.S. at 343, 94 S.Ct. at 617 (grand jury's "operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials"); *see also Costello v. United States*, 350 U.S. at 364, 76 S.Ct. at 409 (grand jury's inquiry is "unfettered by technical rules").

We accordingly hold, for the reasons stated above, that the prosecutor had no duty to give a limiting instruction to the grand jury in this case. Thus, the prosecutor's failure to instruct the grand jury was not an appropriate ground for the exercise of the district court's supervisory power.

## III.

Because we find that neither of the two factors relied on by the district court provided a valid reason for the dismissal of appellees' indictment, we reverse the district court's order dismissing the indictment and remand the case for further proceedings not inconsistent with this opinion.

**REVERSED and REMANDED.**

---

**15.** Implicit in the district court's requirement of a limiting instruction concerning irrelevant evidence is the notion that such evidence improperly prejudices the grand jury and that the criminal justice system cannot accommodate such prejudice. If this is so, it follows that relevant evidence whose probative value is outweighed by its prejudicial effect or propensity to confuse the grand jury on the issues before it should also be excluded. *See* Fed.R.Evid. 403.

In applying Rules 402 and 403 to the grand jury process, prosecutors would inevitably be faced with situations in which a limiting instruction could not remove the prejudicial effect of irrelevant evidence or relevant evidence of minimal probative value. In such situations, the prosecutor would be placed in the dilemma of withholding such evidence and saving the eventual indictment, if he possessed the clairvoyance to foresee the grand jury's charge, or risking the subsequent dismissal of the indictment. The prosecutor's dilemma would be worsened by the fact that, even if he proceeded in an error-free fashion, the grand jury could undo his good work by seizing upon its power to control the investigation and obtaining the evidence in question.