**UNITED STATES,**

v.

**Virgil Dean ST. PIERRE, St. Pierre Insurance Agency, Inc., American Marketing Insurance Corp., Defendants.**

No. S96–75–CR–FTM–17.

United States District Court,
M.D. Florida.

Dec. 10, 1996.

Fran Carpini, Asst. U.S. Atty., United States Attorney's Office, Ft. Myers, FL, for United States.

Howard Freidin, Ft. Myers, FL, Carl Lida, Plantation, FL, for Defendants.

## MEMORANDUM DECISION AND ORDER

GAGLIARDI, Senior District Judge.

Defendants' attorney specially appears [1] for the purpose of requesting an evidentiary hearing to determine whether the government has properly filed a notice of lis pendens against Defendants' property. For the

reasons set forth below, the Court denies the motion.

## I. BACKGROUND

### A. The Superseding Indictment

Defendant Virgil Dean St. Pierre is licensed in the State of Florida to sell life and health insurance. Defendants St. Pierre Insurance Agency, Inc. and American Marketing Insurance Corp. are corporate entities wholly owned by St. Pierre. In September 1996, a Grand Jury returned a Superseding Indictment against Defendants charging them with twenty counts of mail fraud and ten counts of money laundering, in violation of 18 U.S.C. §§ 1341 and 1956(a)(1).

The charges against Defendants in the Superseding Indictment centered around property, known as the Cedar Oaks development, in De Soto County, Florida and alleged that: (1) Defendants had solicited approximately $2.8 million as investments from primarily elderly people after falsely representing to them that Cedar Oaks was partially developed; (2) Defendants made these representations through brochures, photographs, diagrams, and videos that they displayed to potential investors; (3) large portions of these visual aids actually depicted a neighboring development in which Defendants had no interest; and (4) Cedar Oaks was undeveloped and could not presently be developed under Florida state law.

The Superseding Indictment also sought forfeiture of "any property, real or personal, tangible or intangible, wherever located and in whatever names held ... involved in the violations of Title 18, United States Code, Sections 1956(a)(1), money laundering...." and specifically listed Cedar Oaks as property to be forfeited upon Defendants' conviction on the money laundering counts.

### B. Forfeiture Procedures

Once a defendant is found guilty of violating 18 U.S.C. § 1956, the jury decides under 18 U.S.C. § 982 which property, real or personal, is subject to forfeiture. The proce-

---

1. Although the Court has appointed several different attorneys to represent Defendants in the course of this case, each of these attorneys have withdrawn. Hence, Defendants are currently unrepresented by counsel.

dures governing the seizure and disposition of property subject to forfeiture are dictated by the criminal forfeiture provisions in 21 U.S.C. § 853(c), (e)–(p).

Although the government has not taken steps pursuant to § 853 to protect any of Defendants' assets that are listed as forfeitable in the Superseding Indictment, the government has filed a notice of lis pendens against Cedar Oaks.

## II.  DISCUSSION

Defendants argue that the Court must hold a hearing to determine whether the government has taken appropriate action with respect to Cedar Oaks, and they offer several theories in support of their argument. The Court will address each of these theories in turn.

### A.  The Nature of § 853

■ Defendants first contend that, once the Superseding Indictment was returned, the government was obligated to take steps to preserve the availability of Cedar Oaks under § 853 in the event that the government subsequently seeks forfeiture of the property. The Court disagrees.

In criminal forfeiture procedures, the targeted property is not actually forfeited until a defendant is convicted of the underlying offense. However, under 21 U.S.C. § 853(e), a court, upon application by the government, may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other steps that it deems necessary to protect the availability of the property. Contrary to Defendants' assertion, there is nothing in the text of § 853(e) to suggest that these protective measures are mandatory. Thus, the Court finds that it is of no consequence that the government has not yet applied to the Court to protect the availability of Cedar Oaks.

### B.  The Effect of a Notice of Lis Pendens

■ Defendants next argue that the government's filing of a notice of lis pendens against Cedar Oaks is tantamount to a seizure of the property. Again, the Court disagrees.

■ A notice of lis pendens is filed on the public records and operates as constructive notice to all persons that the title to the property is in litigation and that any interest acquired in the property is subject to the decision of the court. *See* 28 U.S.C. § 1964 (1994); Fla.Stat.Ann. § 48.23 (West 1994). While a notice of lis pendens may discourage interested persons from purchasing or investing in the property, the property may nevertheless be purchased or encumbered prior to the court's resolution of the dispute.

■ By contrast, "a 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *see also Lenz v. Winburn,* 51 F.3d 1540, 1547 (11th Cir.1995). That a seizure is distinct from and more restrictive than a notice of lis pendens is not subject to serious debate. *See, e.g., United States v. James Daniel Good Real Property,* 510 U.S. 43, 61–63, 114 S.Ct. 492, 505, 126 L.Ed.2d 490 (1993) (distinguishing between a seizure and a notice of lis pendens); *United States v. Monsanto,* 491 U.S. 600, 615, 109 S.Ct. 2657, 2666, 105 L.Ed.2d 512 (1989) (suggesting that a seizure has the effect of ousting the owner from the property). Therefore, the Court finds that the government's filing of a notice of lis pendens on Cedar Oaks does not constitute a seizure of the property.

### C.  Defendants' Fifth Amendment Right to Due Process of the Law

Defendants further contend that the failure to provide them with a pretrial hearing to determine whether the government's actions are proper effectively violates their Fifth Amendment right to due process. This contention is also without merit.

The Fifth Amendment protects against deprivations of property. As stated above, however, the government's filing of a notice of lis pendens does not constitute a deprivation of Defendants' possessory interest in Cedar Oaks. Thus, the government's actions do not fall within the purview of the Fifth Amendment.

Even if Defendants could show that the government is depriving them of their interest in Cedar Oaks, they still would not be entitled to a pretrial hearing. Section 853(e)(1)(A) does not, on its face, require a pretrial hearing; rather, as stated above, defendants are provided with the opportunity to challenge the forfeiture of their property at trial. As one court has noted, "the criminal forfeiture provisions were intended to provide prosecutors the option to consolidate the forfeiture action with the criminal prosecution and thereby avoid being forced to prove the merits of the underlying criminal case in a separate civil proceeding against the defendant's property well in advance of trial...." *United States v. Draine,* 637 F.Supp. 482, 486 (S.D.Ala.1986). Moreover, property may not be forfeited unless and until a defendant is found guilty of the charges that subject the property to forfeiture. Given the statutory language, the legislative intent, and the ample opportunities that Defendants will have to challenge the underlying money laundering offense at trial, the Court finds it unnecessary to hold a pretrial hearing on the issue of forfeiture.

### D. Determination of Probable Cause

Defendants further assert that they are entitled to a hearing to determine whether or not there is probable cause to believe that Cedar Oaks is forfeitable or is being appropriately restrained. The Court rejects this assertion.

As stated above, Cedar Oaks is not currently being restrained. Even if it were, however, Defendants still would not be entitled to a hearing because this issue has already been determined. One of the basic functions of a grand jury is to determine whether there is probable cause to believe that a crime has been committed. *United States v. DiBernardo,* 775 F.2d 1470, 1476 (11th Cir.1985). In the present case, the Grand Jury determined that there was probable cause to believe that Cedar Oaks formed the basis of Defendants' money laundering scheme, and it specifically found that the property was subject to forfeiture. Thus, probable cause has already been established,

and Defendants are not entitled to have this finding reconsidered prior to trial.

Defendants point to *United States v. Monsanto,* 924 F.2d 1186 (2d Cir.1991) as support for the proposition that grand jury determinations of probable cause may be reconsidered in cases involving the continuation of post-indictment restraining orders. This holding, however, is inconsistent with Eleventh Circuit precedent. The Eleventh Circuit indicated that probable cause to restrain a defendant's assets under § 853 may be based upon the grand jury's return of an indictment against the defendant. *United States v. Bissell,* 866 F.2d 1343, 1355 (11th Cir.1989). Thus, under the law of this circuit, the Court is satisfied that probable cause to restrain Cedar Oaks has been established.

### E. Defendants' Sixth Amendment Right to Counsel

Defendants next argue that the government, by its actions, has made it financially impossible for them to retain counsel of their choice, in violation of the Sixth Amendment. The Court again disagrees.

As stated above, the government's filing of a notice of lis pendens does not restrain or otherwise enjoin Defendants from selling Cedar Oaks. Defendants therefore cannot show that they are financially unable to retain counsel of their choice on these grounds.

Even if Defendants could demonstrate that the government has seized Cedar Oaks, the Court would still conclude that the government's actions do not violate Defendants' Sixth Amendment rights.

All assets falling within the scope of § 853 are to be forfeited upon a defendant's conviction. *Monsanto,* 491 U.S. at 606, 612, 109 S.Ct. at 2661–62, 2664–65 (1989). The rationale behind this rule is that the title to property subject to criminal forfeiture vests in the United States at the time that the defendant commits the act that gives rise to the forfeiture. *See* 21 U.S.C. § 853(c). Thus, the defendant cannot use assets subject to forfeiture to pay for his defense, even if the defendant has no other source of funds. *Caplin & Drysdale, Chartered v. United*

*States*, 491 U.S. 617, 631, 109 S.Ct. 2646, 2655, 105 L.Ed.2d 528 (1989). In the event that Defendants are convicted on the money laundering counts, they would therefore have no right to use any assets derived from Cedar Oaks to pay for their defense.

 Moreover, the Sixth Amendment right to counsel focuses on competency, not choice, of representation. *Id.* at 624–25, 109 S.Ct. at 2651–52. As the Eleventh Circuit noted:

> [T]he right to counsel of choice belongs solely to criminal defendants possessing legitimate, uncontested assets. Here, the inclusion of appellants' assets in an indictment is an assertion that these particular defendants, no matter what the appearances of wealth may be, are and have been paupers ever since their apparent assets were accumulated through criminal conduct. As such, they have no legitimate assets with which to pay an attorney.

*Bissell*, 866 F.2d at 1351. As long as Defendants receive competent representation, their Sixth Amendment rights will not be violated.

### F. Whether Cedar Oaks is a Substitute Asset

 Finally, Defendants contend that Cedar Oaks is a substitute asset and may not be restrained prior to trial. The term "substitute asset" refers to property of a defendant that is unconnected to the underlying crime. *United States v. Ripinsky*, 20 F.3d 359, 362 (9th Cir.1994). Although the Eleventh Circuit has not yet decided whether substitute assets are subject to pretrial restraint under § 853, the Court disagrees with Defendants' contention. The Grand Jury found probable cause to believe that Cedar Oaks is connected to the underlying money laundering offense. Cedar Oaks is therefore not a substitute asset and may properly be restrained prior to Defendants' trial, should the government wish to do so.

### III. CONCLUSION

The Court concludes that the government is not obligated, under § 853, to restrain Cedar Oaks. Additionally, the Court finds that the government's filing of a notice of lis pendens on the property does not constitute a seizure. Moreover, Defendants are not entitled to a pretrial hearing to reconsider either the Grand Jury's determination that Cedar Oaks is forfeitable in the event of Defendants' conviction on the money laundering counts or the determination that Cedar Oaks is connected to the underlying money laundering offense. Should the government decide to so petition the Court, the Court may order the pretrial restraint of Cedar Oaks without violating Defendants' Fifth Amendment right to due process of the law or their Sixth Amendment right to counsel.

So Ordered.