COMMONWEALTH of Kentucky, Appellant,

v.

Earnestine BAKER, Appellee.

No. 1998–CA–000935–MR.

Court of Appeals of Kentucky.

Jan. 14, 2000.

A.B. Chandler III, Attorney General, Todd D. Ferguson, Assistant Attorney General Frankfort, Kentucky, for Appellant.

Mark J. Stanziano, Somerset, Kentucky, for appellee.

BEFORE: DYCHE, GARDNER [1] and HUDDLESTON, Judges.

*OPINION*

HUDDLESTON, Judge:

The Commonwealth of Kentucky appeals from a Pulaski Circuit Court order dismissing with prejudice an indictment charging Earnestine Baker with six counts of assault in the second degree.

In early May 1997, Baker's two daughters, ages 14 and 16, were arguing and fighting with each other. According to Baker, after they failed to heed her verbal command to stop, she struck each of the two girls with a wooden stick. The Division of Social Services of the Cabinet for Families and Children was notified of the incident and the children were removed temporarily from the home on the basis of child abuse.

On May 13, 1997, Detective Randy Goff of the Somerset Police and Cynthia Maggard of Social Services interviewed the two children, who told them that Baker had hit them with a wooden stick. One of the girls also showed them bruises on her thigh and arm, but the other had no visible signs of injury. Both girls stated that they had been struck with various wooden objects in the past. The next day, Detective Goff conducted a taped interview of Baker, who admitted having hit the girls with a wooden stick in an effort to discipline them. Upon searching the family's apartment, Detective Goff recovered several wooden sticks of various sizes, one of which was described as a billy club.

Baker was charged in Indictment No. 97–CR–00103 with six felony counts of criminal abuse involving two beating incidents in May 1997. While that indictment was pending, Detective Gary Jones, who was Detective Goff's supervisor, appeared before the Pulaski County grand jury and testified that Baker had struck her children with an aluminum baseball bat. On

1. Judge Gardner concurred in this decision prior to leaving the Court on January 2, 2000.

December 3, 1997, the grand jury returned Indictment No. 97–CR–00170 charging Baker with six felony counts of assault in the second degree (Ky.Rev.Stat.(KRS) 508.100) concerning the same conduct involved in the prior indictment for criminal abuse. The second indictment alleged that between May 1 and 31, 1997, Baker had committed the offense of "Assault in the Second Degree by wantonly causing serious physical injury to [her two daughters] by means of a deadly weapon or dangerous instrument." Following Baker's arraignment on Indictment No. 97–CR–00170, the trial court granted the Commonwealth's motion to amend the indictment to substitute the word "intentionally" for the word "wantonly," and to dismiss Indictment No. 97–CR–00103.

On March 9, 1998, Baker filed a motion to dismiss the indictment or, in the alternative, to amend the charges to fourth-degree assault. In her motion, Baker argued that she had a constitutional right to use reasonable corporal punishment to discipline her children and that the Commonwealth had failed to show that Baker's conduct satisfied the statutory requirements for second-degree assault. In the motion, Baker noted that the instrument used in the incidents was described by the prosecution at various times as a "wooden club," "billy club," "wooden stick" and "aluminum baseball bat." However, Baker did not seek dismissal at that time based on any irregularities in the grand jury proceedings. On March 16, 1998, the Commonwealth filed a response to the motion arguing that dismissal of the indictment would be premature. Baker filed a reply and asserted, for the first time, that the indictment should be dismissed or the case should be re-presented to the grand jury because the indictment was based on false testimony.

The trial court conducted an evidentiary hearing on the motion on March 23, 1998. At the hearing, Baker's attorney asked the court to dismiss the indictment *with prejudice* because of alleged false testimony before the grand jury. Counsel argued that the prosecution's actions were so egregious that the Commonwealth should not be allowed to present the case to a new grand jury. Detective Jones was the only witness present at the hearing. He testified that he presented the case to the grand jury because Detective Goff, the investigating officer, was temporarily unavailable. He admitted that he had little knowledge about the case and merely relied on the prosecutor to provide the relevant information by answering his questions. He acknowledged that he had testified that Baker struck her children with an aluminum baseball bat, but conceded that there was no evidence that a baseball bat was used.[2]

On April 3, 1998, the trial court dismissed Indictment No. 97–CR–00170 *with*

2. Gary Jones testified before the grand jury (in Indictment No. 97–CR–00170) as follows:
**EXAMINATION BY PROSECUTOR**
Q. Would you state your name, please?
A. Gary Jones.
Q. During the course of, uh, your duties at the Somerset Police Department, did you learn of an investigation, uh, involving Earnestine Baker?
A. Yes, sir.
Q. On May 1, 1997 and again on May 31, 1997, did Ms. Baker, was she, uh, reported to your department for, uh, causing physical injury to her daughter[s]?
A. Yes, sir.
Q. And had she struck her children with a baseball bat?
A. Yes, sir.
Q. And as a result of that, did they, uh, did that cause physical injury to both her children?
A. Yes, sir.
Q. And, uh, during the course of your investigation, Ms. Baker was interviewed? Is that correct?
A. That's correct.
Q. During which time, she acknowledged that she did strike her children about the body with an aluminum baseball bat?
A. Yes, sir.
Q. Okay. Does the grand jury have any questions?
(SILENCE)
A. Thank you.
**END OF TESTIMONY**

*prejudice.* The court noted the ethical obligation of prosecutors to observe the independent status of the grand jury and ensure that indictments are returned in a just manner. It found that Detective Jones's testimony concerning the use of an aluminum baseball bat was materially false and that it affected the grand jury's decision whether to indict on the assault charge, which required the use of a deadly weapon. The court also found that the Commonwealth's Attorney had knowingly or recklessly elicited false testimony before the grand jury through leading and suggestive questions, and Detective Jones voluntarily testified even though he had no personal knowledge of the facts of the case. The court held that dismissal of the indictment with prejudice was necessary to ensure the integrity of the criminal justice system.

■ On appeal, the Commonwealth challenges the dismissal of the indictment and, especially, its dismissal with prejudice. The Commonwealth argues that the trial court lacked authority to dismiss the indictment based on false testimony before the grand jury and, even if it had such authority, that the court abused its discretion in dismissing the indictment with prejudice.

■ Courts are extremely reluctant to scrutinize grand jury proceedings as there is a strong presumption of regularity that attaches to such proceedings.[3] Ordinarily, courts should not attempt to scrutinize the quality or sufficiency of the evidence presented to the grand jury.[4] "An indictment returned by a legally constituted and unbiased grand jury ... if valid on its face, is enough to call for trial of the charge on the merits." [5]

However, in *Bank of Nova Scotia v. United States,*[6] the United States Supreme Court recognized the federal court's inherent supervisory authority to dismiss an indictment based on nonconstitutional irregularities, including prosecutorial misconduct occurring before a grand jury. "Under this standard, dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." [7]

■ Generally, a defendant must demonstrate a flagrant abuse of the grand jury process that resulted in both actual prejudice and deprived the grand jury of autonomous and unbiased judgment.[8] A court may utilize its supervisory power to dismiss an indictment where a prosecutor knowingly or intentionally presents false, misleading or perjured testimony to the grand jury that results in actual prejudice to the defendant.[9] The requirement that the defendant show both a flagrant abuse of the process and actual prejudice was explained in *United States v. Roth:* [10]

The first requirement, that the government know the evidence was perjured, is intended to preserve the prin-

3. *Tarrence v. Commonwealth*, Ky., 265 S.W.2d 40 (1953); *United States v. Jones*, 766 F.2d 994 (6th Cir.1985).

4. *See* Ky. R.Crim. Proc. (RCr) 5.10 (indictment shall not be quashed because of insufficiency of evidence); *United States v. Williams*, 504 U.S. 36, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992); *King v. Venters*, Ky., 595 S.W.2d 714 (1980).

5. *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956).

6. 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988).

7. *Id.* at 256, 108 S.Ct. at 2374, 101 L.Ed.2d at 238 (quoting *United States v. Mechanik*, 475 U.S. 66, 78, 106 S.Ct. 938, 945, 89 L.Ed.2d 50, 61 (1986) (O'Connor, J., concurring)).

8. *Id.* at 257–60, 108 S.Ct. at 2374–76, 101 L.Ed.2d at 238–40; *United States v. Larrazolo*, 869 F.2d 1354, 1360 (9th Cir.1989).

9. *See United States v. Adamo*, 742 F.2d 927 (6th Cir.1984); *United States v. Soberon*, 929 F.2d 935 (3d Cir.1991).

10. 777 F.2d 1200 (7th Cir.1985).

ciple that an indictment cannot be challenged on the basis of the insufficiency of the evidence on which the grand jury acted. . . . What makes the government's knowing use of perjured testimony different is that it involves an element of deceit, which converts the issue from the adequacy of the indictment's evidentiary basis to fraudulent manipulation of the grand jury that subverts its independence. The second requirement in the cases, that the indictment would not have been issued except for the perjured testimony, confines judicial intervention to cases of prejudicial misconduct, that is, to cases where the misconduct made a difference to the defendant.[11]

Although there are no Kentucky cases directly on point, in another context involving conduct before a court, the Kentucky Supreme Court, in *Potter v. Eli Lilly & Co.,*[12] affirmed that this state's courts have an inherent supervisory power to protect the integrity of the judicial process from fraud and bad faith conduct. In so doing, the Court said:

> We are persuaded that there are certain implied powers which are inherent in any Court of Justice in this State which arise from the very nature of their institution. Such authority is required because they are necessary to proper exercise of all other judicial authority. As such, these powers are governed not by statute or rule, but by the control vested in the court to manage its own affairs so as to achieve the orderly and expeditious, accurate and truthful disposition of causes and cases. . . . In Kentucky, such authority is vested in the sound discretion of the court in question subject to appropriate appellate review. All such authority must be exercised with great caution even though it is necessarily incidental to the function of all courts.[13]

Despite the absence of Kentucky case law in this area, we reject the Commonwealth's contention that the circuit court did not have authority to utilize its supervisory power to dismiss the indictment based on prosecutorial misconduct in order to preserve the integrity of the grand jury proceeding. Here, the trial court found that Detective Jones made a materially false statement before the grand jury[14] and that the prosecutor misled the grand jury by indicating that Baker used an aluminum baseball bat to beat her children when there was no evidence to support the belief that anything other than a wooden stick was used. The court found that the prosecutor intentionally misrepresented the instrument used in order to elevate the seriousness of the offense to second-degree assault, and thereby violated the independence of the grand jury.

Although the prosecutor who presented the case to the grand jury did not testify at the hearing on the motion to dismiss,[15] Detective Jones admitted that there was no evidence to support the claim that Baker used an aluminum baseball bat. The police seized several items from Baker's apartment including a wooden stick and a billy club, but no baseball bat. A different

---

11. *Id.* at 1204.

12. Ky., 926 S.W.2d 449 (1996).

13. *Id.* at 453.

14. The trial court cited *Commonwealth v. Stallard,* Ky., 958 S.W.2d 21 (1997), in determining the legal effect of Detective Jones's testimony. *Stallard,* however, involved the statutory offenses of perjury and false swearing by a witness before a grand jury. Although the court's criticism of Detective Jones's appearance before the grand jury without adequate knowledge of the case is appropriate, the record does not support its finding that Jones *knowingly* gave false testimony and committed perjury.

15. We have been informed that the prosecutor who presented the case to the grand jury was suspended from the practice of law following his conviction in the United States District Court for the Eastern District of Kentucky of the crime of Interference with Commerce by Threat involving the extortion of money from a defendant he was prosecuting.

prosecuting attorney eventually conceded that the information presented to the grand jury regarding the aluminum baseball bat was false. The trial court's finding that the prosecutor knowingly or intentionally presented false information to the grand jury is amply supported by the record.

Furthermore, we agree with the trial court's conclusion that the false testimony prejudiced Baker by substantially influencing the grand jury's decision to indict. Detective Jones's testimony consisting of affirmative responses to the prosecutor's questions was the only evidence presented to the grand jury. The prosecutor's action deprived the grand jury of its ability to exercise its independent judgment. We cannot say the trial court erred in exercising its supervisory power to dismiss the indictment charging Baker with second-degree assault.

While we agree with the trial court that the prosecutor's actions in this case were both flagrant and prejudicial and justify dismissal of the indictment, we believe that the court abused its discretion in dismissing the indictment *with prejudice*. Although the courts exercise a supervisory role over grand juries, that role is limited, and dismissal of an indictment is "an extreme sanction that should be infrequently utilized." [16] Dismissal of an indictment with prejudice is the most severe sanction possible and necessarily implicates separation-of-powers principles.[17]

Only a few cases discuss the sanction of dismissal of an indictment with prejudice. For instance, in *United States v. Lawson*,[18] the court declined to dismiss an indictment with prejudice despite "particularly egregious" misconduct by the prosecutor:

Although defendants do have a constitutional right to an informed and unbiased grand jury, they have no concomitant right to bar forever investigation into their alleged criminal conduct. While outrageous government conduct could taint evidence irrevocably, or prejudice a defendant's case on the merits such that notions of due process and fundamental fairness would preclude reindictment, questioning a grand jury witness in a harrassing [sic] manner or prejudicing a grand jury with inflamatory [sic] remarks is generally curable. Thus, most federal courts that have dismissed indictments due to prosecutorial misconduct in the grand jury room have done so without prejudice to subsequent reindictment.

Significantly, the remand in [*United States v.*] *Serubo* [,604 F.2d 807 (3rd Cir.1979),] indicates that the better view is to allow reindictment upon dismissal if the new grand jury would not be affected by the prior government improprieties. Here, there has been no showing that the actual evidence against the defendants is tainted irrevocably, or that there exists in this District a pattern of prosecutorial misconduct that is "widespread or continuous." The grand jury misconduct about which defendants rightly complain was the product of a single Assistant United States Attorney, who is no longer associated with the case. While the court in no way condones his conduct, in balancing the deterrent objectives of dismissal with prejudice against society's interest in the prosecution of those who violate its law, the court concludes that it should not forever bar the government from prosecuting the defendants.[19]

**16.** *United States v. DiBernardo*, 775 F.2d 1470, 1475 (11th Cir.1985) (quoting *United States v. Pabian*, 704 F.2d 1533, 1536 (11th Cir.1983)).

**17.** *United States v. Isgro*, 974 F.2d 1091, 1097 (9th Cir.1992); *United States v. Williams*, 504 U.S. at 46, 112 S.Ct. at 1741, 118 L.Ed.2d at 364.

**18.** 502 F.Supp. 158 (D.Md.1980).

**19.** *Id.* at 172–73 (citations omitted). *See also Pinson v. Maynard*, 181 W.Va. 662, 383 S.E.2d 844 (1989).

In *United States v. Morrison*,[20] (finding dismissal of indictment was improper relief for unsuccessful attempt by drug agents to obtain incriminating information from accused without presence of her attorney), the Supreme Court cautioned courts "to identify and then neutralize the taint [of prosecutorial misconduct] by tailoring relief appropriate in the circumstances. . . ." A trial court should consider alternative sanctions before imposing the ultimate sanction of dismissal with prejudice which precludes any further prosecution.[21] The Court in *Bank of Nova Scotia* noted several alternative remedies other than dismissal of an indictment available for prosecutorial misconduct including punishment for contempt of court, chastisement in a published opinion, or bar or agency disciplinary action.[22]

In the present case, there is no indication that the prosecuting attorney's action irrevocably tainted the evidence or would prejudice Baker's case upon trial. Furthermore, Baker has not shown and does not contend that the Commonwealth's Attorney's Office engaged in widespread and continuous similar misconduct outside of this particular case. The prosecuting attorney who presented the case to the grand jury is no longer involved or even employed by the state, and a new prosecuting attorney is now handling the case.

While we agree, as earlier indicated, that dismissal of the indictment is appropriate, upon balancing the appellee's interests with the societal interests and any deterrent effect, we conclude that the indictment should not be dismissed with prejudice. We certainly echo the trial court's criticism of the prosecutor's conduct in this case, but conclude, based on the authorities above cited, that the court abused its discretion in dismissing the indictment with prejudice.

Therefore, we affirm the order dismissing the indictment, reverse that portion of the order dismissing the indictment with prejudice, and remand for further proceedings consistent with this opinion.

ALL CONCUR.

**20.** 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564, 568 (1981).

**21.** *See United States v. Welborn*, 849 F.2d 980, 985 (5th Cir.1988).

**22.** 487 U.S. at 263, 108 S.Ct. at 2378, 101 L.Ed.2d at 243.