RENDERED: SEPTEMBER 22, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0534-MR

TERESA HANEY                                       APPELLANT

V.             ON APPEAL FROM MORGAN CIRCUIT COURT
HONORABLE REBECCA K. PHILLIPS, JUDGE
NO. 16-CR-00063

COMMONWEALTH OF KENTUCKY                 APPELLEE

**OPINION OF THE COURT BY JUSTICE NICKELL**
**AFFIRMING IN PART, VACATING IN PART, AND REMANDING**

Teresa Haney appeals as a matter of right[1] from the Morgan Circuit Court's judgment after entering a conditional guilty plea[2] to one count of manslaughter in the first degree[3] and one count of manslaughter in the second degree,[4] reserving three issues for appellate review. Upon a careful review of the briefs, the record, and the law, we affirm in part and vacate in part.

On August 6, 2016, around 3:30 p.m., Thomas Tufts and Janet Caskey were traveling southbound on Highway 7 in Morgan County, Kentucky, on Tuft's motorcycle. Haney was driving northbound in her sports utility vehicle

---

[1] Ky. Const. §110(2)(b).

[2] Kentucky Rules of Criminal Procedure (RCr) 8.09.

[3] Kentucky Revised Statutes (KRS) 507.030.

[4] KRS 507.040.

(SUV) and collided head-on with them. After the collision, Haney's SUV continued across the southbound lane into a ditch, stopping at a telephone pole. Tufts and Caskey were not wearing helmets. Tufts died at the scene. Caskey and Haney were airlifted to St. Mary's Hospital in Huntington, West Virginia, where Caskey died six days later.

Kentucky State Police (KSP) Trooper Grant Faulkner responded to the scene of the collision. He made observations and determined Haney crossed the center line before striking the motorcycle. Later, KSP conducted a formal accident reconstruction and examined the event data recorder from Haney's vehicle. During this investigation, the event data recorder revealed Haney did not apply her brakes and satellite photos from Google Earth further showed the skid marks Trooper Faulkner observed existed before the collision.

Trooper Eric Homan was dispatched to St. Mary's Hospital. He was unable to interview Caskey who was in surgery, but he interviewed Haney who was in a hospital bed in the trauma center. Trooper Homan confirmed with the charge nurse Haney was not undergoing any medical procedures. Although Haney had some injuries, she was awake and alert. Trooper Homan told Haney he knew very little other than there was a fatality and he was a state trooper sent to talk to her and get a blood sample. He told her she was not under arrest. Trooper Homan was in uniform with his badge and gun. Haney agreed to speak to him, and he estimated the interview lasted about twenty minutes. Trooper Homan recorded the interview, but the recording quit near the end. He testified nurses might have entered the room during the interview,

2

but he could not recall and, if they did, they were not a distraction. At one point during the interview one of Haney's family members tried to see her. Trooper Homan asked the person to wait in the hall a few minutes until the recorded interview was over.

Haney advised she could not remember many details about the collision, but "believed she may have been attempting to overtake another vehicle and thought she may have hit a motorcycle but was unsure." Trooper Homan questioned Haney's sobriety because of her slightly slurred speech. Haney advised she had taken Xanax and hydrocodone between noon and 2:00 p.m. that day. She did not think her medication affected her driving since she had built up a tolerance, but she could not be sure. When asked if any other drugs would come back in her blood, she admitted taking a puff of marijuana two weeks prior.

Trooper Homan did not provide *Miranda*[5] warnings before interviewing Haney. Although Haney had not been charged and was not under arrest, he read the implied consent warning to her and offered her an opportunity to consult with an attorney which she declined. Trooper Homan also requested a blood draw and Haney acquiesced. A hospital employee drew the blood sample which Trooper Homan sent to the KSP laboratory for testing. The blood test results indicated the presence of oxycodone and hydrocodone but not alcohol. Also, the testing did not show the existence of metabolites in Haney's system which would indicate earlier use of marijuana.

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

Three days after the interview, Haney was discharged from the hospital. More than two months later, she was indicted for two counts of wanton murder[6] based on driving while under the influence of drugs. During pretrial proceedings, Haney's counsel filed motions to suppress and a motion to dismiss the indictment. The trial court held a suppression hearing where Haney argued her statements made to Trooper Homan at the hospital were in violation of *Miranda*. At the same suppression hearing, Haney argued the blood evidence should be suppressed since the blood sample was taken without a warrant. In a detailed written order, the trial court denied the suppression motions, concluding a *Miranda* warning was not required because Haney was not in custody and a warrant was not required for the blood draw because Haney consented. Haney's motion to dismiss the indictment "due to abuse of the grand jury process" asserted "the Indictment was based on false, misleading and/or incomplete material statements made to the Grand Jury." Upon a review of the grand jury transcript and recording, the trial court found the motion to dismiss was without merit.

Haney subsequently entered a conditional plea of guilty on May 20, 2019, to the amended charges of first-degree manslaughter and second-degree manslaughter. She reserved three issues for appeal which were outlined in two accompanying orders addressing the conditional guilty plea, all executed the same day. The trial court sentenced Haney to the agreed upon twenty-five-year sentence. This appeal followed.

---

[6] KRS 507.020.

4

Haney asserts the trial court erred by failing to: 1) suppress her statements; 2) suppress the results of her blood test; and 3) dismiss the case due to alleged abuse of the grand jury process. We shall address each argument in turn.

First, Haney argues the trial court erred by failing to suppress her statements obtained without a *Miranda* warning. She asserts Trooper Homan drove across state lines, initiated contact, was alone with her in her hospital room wearing his uniform and with his gun and badge visible, and read her Kentucky's implied consent warning. She alleges all of these factors created a show of authority and a coercive custodial environment which rendered her statements not fully voluntary. She also contends Trooper Homan took advantage of her intoxication.

> The standard of review of a pretrial motion to suppress is twofold. First, we review the trial court's findings of fact under a clearly erroneous standard. Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence. We then conduct a *de novo* review of the trial court's application of the law to the facts to determine whether its decision is correct as a matter of law.

*Whitlow v. Commonwealth*, 575 S.W.3d 663, 668 (Ky. 2019) (citation and internal quotation marks omitted)).

"*Miranda* warnings are due only when a suspect interrogated by the police is 'in custody.'" *Thompson v. Keohane*, 516 U.S. 99, 102 (1995). "[W]hether a defendant is in custody is a mixed question of law and fact to be reviewed *de novo*." *Commonwealth v. Lucas*, 195 S.W.3d 403, 405 (Ky. 2006). Custody occurs when an officer, by some means of physical force or show of

authority, restrains the liberty of an individual. *Baker v. Commonwealth*, 5

S.W.3d 142, 145 (Ky. 1999).

> The test is whether, considering the surrounding circumstances, a reasonable person would have believed he or she was free to leave. *Baker, supra,* citing *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Some of the factors that demonstrate a seizure or custody have occurred are the threatening presence of several officers, physical touching of the person, or use of a tone or language that might compel compliance with the request of the police. *Baker.*

*Lucas,* 195 S.W.3d at 405-06.

> A custody determination cannot be based on bright-line rules, but must be made only after considering the totality of the circumstances of each case. In *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), the United States Supreme Court stated that "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." *Id.* at 495, 97 S.Ct. at 714. However, the Court went on to state that the somewhat coercive nature of being questioned by a potential adversary does not create the type of risk which warrants a per se requirement to issue *Miranda* warnings every time a suspect is questioned by a police officer in the station house. *Id.* . . . Rather, the pivotal requirement triggering an officer's duty to administer Miranda warnings is whether the environment has become so coercive as to induce reasonable persons to believe that (1) they are under arrest; or (2) they have "otherwise [been] deprived of [their] freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

*Jackson v. Commonwealth,* 187 S.W.3d 300, 310 (Ky. 2006).

The trial court made various factual findings including that Haney was in

a spacious, enclosed trauma room with a door that was closed but not locked.

Trooper Homan thought Haney was alert and awake. Upon contact with

Haney, Trooper Homan told her he was there to interview her and complete a

6

drug kit, but he was not going to arrest her. Trooper Homan did not order anyone to leave or stay out of the trauma room but did request a family member wait in the hallway until the recorded interview was over. Trooper Homan was in uniform, wearing his badge and gun. Haney never asked to stop the interview nor take a break. She never asked for an attorney. Trooper Homan read the implied consent warning and reiterated Haney was not under arrest. Haney consented to the blood draw by a phlebotomist. The trial court also noted defense counsel asked Haney what she believed the implied consent warning meant and Haney answered, "If I didn't, I was going to be under arrest." The trial court's findings of facts are supported by the testimony given at the suppression hearing. As such, the findings of facts are not clearly erroneous.

Further, we are persuaded the trial court's application of the law to the facts is correct. *Whitlow*, 575 S.W.3d at 668. The environment never became so coercive a reasonable person would have felt they were under arrest and deprived of their freedom, which would have triggered Officer Homan's duty to administer *Miranda* warnings. *Jackson*, 187 S.W.3d at 310. Rather, Haney was able to make free and rational choices when she was questioned by Trooper Homan.

For instance, the trial court's order denying the suppression motion contained several quotes from the recording of the interview repeatedly making clear Haney was not under arrest. First, before Trooper Homan read the implied consent warning, he advised Haney, "I have no intentions of charging

7

you with anything today as it sits right now. I don't even have any circumstances of the collision." Second, when he advised he was reading the implied consent warning, he stated, "You're not under arrest right now." He explained the warning was part of procedure and repeated, "You're not under arrest. I'm not charging you with DUI. I don't know any circumstances. I would not be able to charge you." And third, when Haney asked, "How long would it be," before she might be arrested on any criminal charges, Trooper Homan advised he had no idea and said, "I hope you do not get arrested."

The recording of the interview also indicates when asked if a family member could enter the room, Trooper Homan replied, "Just give me a few minutes. I'm almost done." He testified he wanted to complete the recorded interview and feared a distraction. The trial court held this brief delay seemed reasonable and practical, rather than a show of force, and we agree.

Haney argues the trooper's reading of the implied consent warning was itself a show of force. We disagree, but we note the warning, even if it were coercive, came after the interview and, thus, would not be a reason to suppress her statements which were already given.

Haney argued being in an out-of-town hospital without a vehicle restricted her movement. However, these conditions were not caused by the trooper. He repeatedly told her he was not going to arrest her, and he did not. He never threatened her, never raised his voice, and never implied coercion. No promises were ever made or suggested. She never asked to stop the interview and never chose to ask for an attorney.

8

Haney's unsupported declaration at the suppression hearing that she thought she was going to be arrested if she did not submit to the blood draw was found not to be credible by the trial court. Haney never testified she felt restrained, restricted, or otherwise compelled to speak with Trooper Homan. She was able to express herself in an understandable fashion. Based on the totality of the circumstances, Haney was not "in custody" for *Miranda* purposes. Thus, the trial court's denial of Haney's motion to suppress her statements was not erroneous.

Second, Haney argues the trial court erred by failing to suppress the blood draw. As noted earlier, the trial court denied Haney's suppression motion, concluding that a warrant was not required because Haney consented to the blood draw. Particularly, the trial court analyzed whether a search warrant was required under KRS 189A.105(2)(b) and Fourth Amendment search and seizure principles in light of *Birchfield v. North Dakota,* 579 U.S. 438 (2016), and then recently-decided *Commonwealth v. Brown,* 560 S.W.3d 873 (Ky. App. 2018).[7] While concluding KRS 189A.105(2)(b)'s plain language negated the warrant requirement because Haney granted consent for the blood draw, the trial court also observed that according to *Commonwealth v. Morriss,* 70 S.W.3d 419 (Ky. 2002), cited in *Brown,* KRS 189A.105(2)(b) is not applicable

---

[7] *Brown* was rendered on May 18, 2018, about one month prior to Haney filing her suppression motion. Once Haney became aware of *Brown,* she filed it as supplemental material, describing *Brown* as distinguishable from her case and noting that as rehearing of *Brown* was being requested, its applicability remained in question. The Court of Appeals denied rehearing on October 8, 2018. *Brown* was final when the trial court entered its opinion and order on May 30, 2019, denying Haney's motion to suppress the blood test.

to Haney's case. *Morriss*, a case which does not involve consent, holds that if the accident involves a death or physical injury, KRS 189A.105(2)(b) does not apply if a charge has not been brought, and instead Fourth Amendment principles apply. *Id.* at 421.

With the facts of Haney's case being comparable to *Brown*, a case in which the defendant was not under arrest and also consented to the blood draw after being read the implied consent warning, the trial court relied upon *Brown*'s holding that in contrast to the North Dakota statutory scheme considered in *Birchfield*, Kentucky's implied consent scheme is not coercive and *Birchfield* did not apply to it. The trial court concluded the implied consent warning did not negate the voluntariness of Haney's consent.[8]

On appeal, Haney asks this Court to overrule the holding in *Morriss* that "where there is death or physical injury but no charge has yet been brought, [KRS] 189A.105(2)(b) does not apply and traditional search and seizure principles control," 70 S.W.3d at 421, and hold KRS 189A.105(2)(b) requires a warrant to be issued for a blood draw even if a charge has not been brought. The basis of Haney's request is KRS 189A.105(2)(b)'s text. Haney argues the text does not state there is an exception to the warrant requirement when no

---

[8] The trial court also rejected Haney's argument the implied consent warning is inherently coercive when considering *Commonwealth v. Hernandez-Gonzalez*, 72 S.W.3d 914 (Ky. 2002). In *Hernandez-Gonzalez*, when evaluating the impact of a defect in KRS 189A.105's implied-consent warning, the Court stated "as consent is implied by law, one cannot claim coercion in consenting to a test." *Id.* at 917. The Commonwealth cites to this Court the preceding quote from *Hernandez-Gonzalez* in support of its argument the language of the implied consent warning by itself is not coercive.

charge has yet been brought. Beyond this KRS 189A.105(2)(b) argument, Haney argues the blood sample was taken without a warrant in violation of her Fourth Amendment rights, the search being based upon her coerced consent.

The Commonwealth asserts because Haney had not been charged with any offense at the time Trooper Homan interviewed her, as stated in *Morriss*, traditional search and seizure principles apply. Relying on *Brown's* Fourth Amendment analysis, the Commonwealth argues because Haney expressly consented to the blood draw, a warrant was unnecessary and her Fourth Amendment rights were not violated. The Commonwealth points out that when the trial court considered Haney's suppression hearing testimony that she felt coerced to consent to the test due to the belief that she would go to jail for not taking the test, the trial court noted, "[s]ignificantly, the defendant testified to no specific word or action which created this impression." The Commonwealth contends there is no evidence of record to support Haney's contention she was coerced into providing a blood sample.

At the suppression hearing, Trooper Homan testified he read the entirety of the implied consent warning to Haney. The implied consent portion of the interview was played at the suppression hearing. Along with the other mandated warnings, Trooper Homan advised Haney if she were convicted of KRS 189A.010, refusal to submit to the blood draw would subject her to a mandatory minimal jail sentence twice as long as the mandatory minimum jail sentence that would be imposed if she were to submit to the requested blood test. Haney responded that the warning was confusing. Trooper Homan

11

volunteered to read the warning again and began to do so. At this point, the recorder stopped.

As noted earlier, Haney stated at the suppression hearing she took the implied consent warning to mean if she didn't consent to the blood draw, she was going to be under arrest. This led to the Commonwealth asking Haney what she thought she would be arrested for. This exchanged followed:

> Haney: They were doing blood looking for, it was an accident, and they had gave me medicine on the way to the hospital, and he said if I refused that it would double any jail time.
>
> Commonwealth: For what? For what?[9]
>
> Haney: I would presume that it would be DUI from them wanting blood.

While not cited by either party, *Commonwealth v. McCarthy*, 628 S.W.3d 18 (Ky. 2021), is precedent now applicable to Haney's argument that her consent to the blood draw was coerced by the threat of increased jail time if she did not consent to the blood draw.[10] *McCarthy*, in contrast to *Brown*, concluded *Birchfield* applies to KRS 189A.105 and recognized the coercive nature of the implied consent statutory scheme. 628 S.W.3d at 32-34. As this Court clarified in *McCarthy*, *Birchfield* requires a warrant for a blood draw

---

[9] Defense counsel's comments and the trial court's admonition and other instruction omitted.

[10] *McCarthy* was rendered April 29, 2021. This Court denied the Commonwealth's petition for rehearing August 26, 2021. The United States Supreme Court denied the Commonwealth's petition for a writ of certiorari February 22, 2022. *Kentucky v. McCarthy*, 142 S.Ct. 1126 (2022).
Haney filed her appellate brief in this Court July 6, 2021. The Commonwealth's filed its brief December 3, 2021. Neither party mentions *McCarthy*.

12

unless exigent circumstances exist or valid consent is given for the blood draw. *Id.* at 22.

The posture of this case in regard to the coerciveness of the implied consent warning when Haney submitted to the blood draw is similar to that for Beylund, the defendant in *Birchfield* who submitted to the blood test after being read North Dakota's implied consent warning, informing him that his test refusal was itself a crime. 579 U.S. at 454. After the *Birchfield* Court concluded "that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense" under the Fourth Amendment's reasonableness standard, *id.* at 477, the Court vacated the judgment against Beylund and remanded the case for further proceedings. *Id.* at 479. The Court stated: "[b]ecause voluntariness of consent to a search must be 'determined from the totality of all the circumstances,' we leave it to the state court on remand to reevaluate Beylund's consent given the partial inaccuracy of the officer's advisory." *Id.* at 478 (internal citation omitted).

While the Commonwealth contends there is no evidence of record to support Haney's contention she was coerced into providing a blood sample, a review of the suppression hearing and the trial court's finding of facts regarding Haney's testimony indicates otherwise. The trial court's findings include Haney's statement about the blood draw: "If I refuse it would double any jail time." In light of *Birchfield* and *McCarthy*, we remand this case to the trial court to consider whether Haney's consent was voluntary under the totality of the circumstances which included the warning that if she refused the blood

13

test and if she were convicted of DUI, her mandatory minimum jail sentence would be doubled.

In regard to Haney's request that we overrule the interpretation of KRS 189A.105(2)(b) set forth in *Morriss*, we decline to do so. In 2016, the year of Haney's blood draw, KRS 189A.105(2)(b) stated in pertinent part:

> Nothing in this subsection shall be construed to prohibit a judge of a court of competent jurisdiction from issuing a search warrant or other court order requiring a blood or urine test, or a combination thereof, of a defendant charged with a violation of KRS 189A.010, or other statutory violation arising from the incident, when a person is killed or suffers physical injury, as defined in KRS 500.080, as a result of the incident in which the defendant has been charged. *However, if the incident involves a motor vehicle accident in which there was a fatality, the investigating peace officer shall seek such a search warrant for blood, breath, or urine testing unless the testing has already been done by consent.*

(Emphasis added.)

Even if the holding in *Morriss* that "where there is death or physical injury but no charge has been brought, [KRS] 189A.105(2)(b) does not apply" is erroneous, overruling that holding would be inconsequential for Haney because she consented to the blood draw, either voluntarily or involuntarily. If the consent was voluntary, under KRS 189A.105(2)(b) as well Fourth Amendment law, a warrant was not necessary for the blood draw. With that being so, Haney's request is a request for an advisory opinion, and this Court does not issue advisory opinions. *Nordike v. Nordike*, 231 S.W.3d 733, 739 (Ky. 2007).

Furthermore, KRS 189A.105(2)(b) was revised, effective April 6, 2022, 2022 Ky. Acts ch. 83, § 4, to state:

> Nothing in this subsection shall be construed to prohibit a judge of a court of competent jurisdiction from issuing a search warrant or

14

other court order requiring a blood or urine test, or a combination thereof, of a defendant charged with a violation of KRS 189A.010, or other statutory violation arising from the incident. However, if the incident involves a motor vehicle accident in which there was a fatality, the investigating peace officer shall seek such a search warrant for blood testing unless the testing has already been done by consent.

As amended, the language at issue in *Morriss* is no longer part of KRS 189A.105(2)(b). With the version of KRS 189A.105(2)(b) at issue in *Morriss* now superseded, we further find no basis for acting on Haney's invitation to overrule *Morriss*.

Finally, Haney alleges the trial court erred by failing to dismiss the charges due to allegedly false statements made to the grand jury. In particular, Haney claims Trooper Faulkner made incorrect statements on the accident report relating to road condition being "wet" and it was "raining." Trooper Faulkner also noted skid marks, which were later found to be pre-existing. Haney contends Trooper Faulkner presented impact calculations to the grand jury based upon the skid marks. At the suppression hearing, Trooper Faulkner testified the road conditions were "dry" at the time of the collision but "it seemed like it may have rained after." She asserts if the grand jury had not heard incorrect statements about the road conditions and about her admission to having a "puff" of marijuana which might possibly show in her blood results when no trace of marijuana or metabolites subsequently did, she might not have been indicted for murder. Relying on *Commonwealth v. Baker*, 11 S.W.3d 585 (Ky. App. 2000), she argues it was prejudicial for the grand jury to have been presented false or misleading testimony about the road conditions.

15

"Courts are extremely reluctant to scrutinize grand jury proceedings as there is a strong presumption of regularity that attaches to such proceedings." *Id.* at 588. In *Baker* though, the Court of Appeals held a trial court had the "supervisory power to dismiss an indictment where a prosecutor knowingly or intentionally presents false, misleading or perjured testimony to the grand jury that results in actual prejudice to the defendant." *Id.* The defendant must demonstrate "a flagrant abuse of the grand jury process that resulted in both actual prejudice" and that the grand jury was deprived of "autonomous and unbiased judgment." *Id.*

Haney's claims about the grand jury proceedings do not rise to the level warranting the relief she seeks. Although Haney argues Trooper Faulkner incorrectly stated to the grand jury that road conditions were wet and what skid marks at the scene of the crash indicated, we note he testified at the grand jury road conditions were "dry and clear" on the date of the wreck and never discussed skid marks. He explained he documented the skid marks because he was trained to document everything. His actual testimony to the grand jury was the black box information from Haney's vehicle revealed she did not try to avoid the crash as she did not apply her brakes. The trial court did not err in denying Haney's motion to dismiss her indictment.

For the foregoing reasons, the judgment of the Morgan Circuit Court is affirmed in part and vacated in part. This case is remanded to the Morgan Circuit Court for further proceedings consistent with this Opinion.

16

All sitting. Minton, C.J.; Hughes and Lambert, JJ., concur. Conley, J., concurs by separate opinion, in which Keller and VanMeter, JJ., join.

Conley, J., concurs by separate opinion:

Last year, this Court rendered its decision in *Commonwealth v. McCarthy,* 628 S.W.3d 18 (Ky. 2021). That decision held that the enhancement of a criminal penalty for refusing to submit to a blood test under Kentucky's implied consent law is unconstitutional, following *Birchfield v. North Dakota,* 579 U.S. 438 (2016). *Id.* at 32-34. The Court also held that refusal to submit to a blood test could not be used as evidence against a defendant in a prosecution for DUI, unless by way of rebuttal or impeachment evidence. *Id.* at 34-36. I joined with Justice VanMeter concurring in part and dissenting in part, agreeing that enhancement of criminal penalties for refusing a test is unconstitutional but dissenting as to the prohibition of using that refusal as evidence at trial. *Id.* at 40-41. Consistency demands that I continue to adhere to our holding in *McCarthy*, thus I concur in the decision today. I write separately, however, to express my understanding of the current state of the implied consent law as to blood tests so that some clarity on the issue may be had by law enforcement officers, as well as the bench and bar.

To speak plainly, Kentucky is no longer an implied-consent state for blood tests. Because *McCarthy* holds enhancing criminal penalties for refusing a blood test is unconstitutional, and that refusal cannot even be used as evidence of guilt for driving under the influence, there is no way to effectively enforce the implied consent that Kentucky law ostensibly still holds to. KRS

17

189A.103(3). Thus, police officers are now required to read to a person suspected of driving under the influence that by using the roadways of Kentucky, they have given implied consent to a blood test. KRS 189A.105(2)(a). But the accused has an unequivocal right to withdraw that consent and refuse the test with no penalties attached save suspension of their driver's license. KRS 189A.105(1).[11] It seems elementary to me that a law incapable of being enforced is not a law at all. Thus, the continued statutory requirement that police officers read the implied consent warning for blood tests is meaningless. And as we hold today, even *reading* the warning raises a question of undue coercion to be considered under the totality of circumstances.

---

[11] It remains an open question under our jurisprudence whether such a penalty can still be imposed. Normally, being issued a driver's license is considered a privilege. *McCarthy, supra*, at 28. But absent a criminal conviction, the suspension of driving privileges for an indefinite amount of time upon a mere charge of driving under the influence raises a question of due process, especially in light of the common law that a citizen has the right to freely travel within the state using the common means of travel. As the Supreme Court of Appeals of Virginia once stated,

> The right of a citizen to travel upon the public highways and to transport his property thereon in the ordinary course of life and business is a common right which he has under his right to enjoy life and liberty, to acquire and possess property, and to pursue happiness and safety. It includes the right in so doing to use the ordinary and usual conveyances of the day; and under the existing modes of travel includes the right to drive a horse-drawn carriage or wagon thereon, or to operate an automobile thereon, for the usual and ordinary purposes of life and business.

*Thompson v. Smith*, 154 S.E. 579, 583 (Va. 1930).

The one saving grace of this ruling is that *McCarthy* was not law when Haney's car crash occurred. She was a read an implied consent warning that included mention of enhanced criminal penalties. After *McCarthy*, there are no penalties, except license suspension, to be mentioned and thus, it is unlikely that an implied consent warning will ever be reasonably considered coercive. But it nonetheless should be made clear that the implied consent to blood testing in Kentucky is functionally non-existent. If the suspected driver can refuse the test, what is the point of implying consent at law? It is precisely to avoid such a circumstance that an implication was statutorily created. Otherwise, a police officer can only politely ask for a blood test to be performed or obtain a search warrant. In both cases, consent is no longer implied. Thus, police officers should no longer seek to obtain blood tests under a non-functional theory of implied consent. They are free to ask for one or seek to obtain a warrant if time permits, as they always have. Fortunately, if officers wish to obtain evidence of alcohol intoxication as quickly as possible, they still may seek a breath test which, under our statutory law and *Birchfield*, a citizen suspected of driving under the influence has "no right to refuse[.]" *Birchfield*, 579 U.S. at 478; KRS 189.105A.

Keller and VanMeter, JJ., join.

COUNSEL FOR APPELLANT:

Robert C. Yang
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Mark D. Barry
Assistant Attorney General