**STATE of Minnesota, Appellant,**

v.

**Craig Francis BALE, Respondent.**

**No. 47909.**

Supreme Court of Minnesota.

June 16, 1978.

Warren Spannaus, Atty. Gen., St. Paul, Bob Goldman, County Atty., Albert Lea, for appellant.

Peterson, Hanson, Goodmanson, Schlichting & Davies, John O. Goodmanson, Albert Lea, for respondent.

Heard before ROGOSHESKE, KELLY, and YETKA, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

This is an appeal by the state pursuant to Rule 29.03, Rules of Criminal Procedure, from that part of a pretrial order of the trial court suppressing physical evidence in a prosecution of defendant for aggravated assault, Minn.St. 609.225, subd. 2. In reversing the order of suppression and remanding for trial, we need not decide whether the initial warrantless custodial arrest of defendant for a misdemeanor offense of driving after revocation of a driver's license was valid. The state is not precluded from prosecuting defendant for an alleged aggravated assault with a pistol committed by defendant against the arresting officer while in his custody nor from introducing at trial the weapon and jacket seized without a warrant shortly after the assault.[1]

At 7:30 p. m. on January 28, 1977, Mark Harig, Freeborn County deputy sheriff and constable of Alden, Minnesota, was in his garage at his home in Alden when he saw a blue International pickup truck hit a snowdrift covering most of Euclid Street in front of his house. Because of poor visibility resulting from blizzard conditions, Harig was unable to see who the driver was, but he did see him get out of the truck, check for damage, and then get back in and drive away, heading north. Five minutes later, defendant, accompanied by his dog, appeared at the garage and asked if he could warm himself, saying that he had been driving a pickup truck which slid into a ditch on Euclid Street north of town. Because of this information, Harig assumed that defendant was the driver of the truck and the man he had seen a few minutes earlier. After warming himself a moment, defendant and his dog left, running toward downtown Alden.

Harig then got into his squad car, drove north on Euclid Street, and found the abandoned pickup truck, the same one he had seen earlier. Harig estimated $250 front-end damage, which he assumed the vehicle sustained from hitting the snowdrift earlier. Intending to fill out an accident report believed required by statute in such cases, Harig returned to Alden, where he found defendant in a bar. Defendant admitted that the truck was his and Harig began filling out the report. While radioing for a driver's license check on defendant, Harig learned that defendant's license had been revoked, whereupon Harig arrested defendant for the misdemeanor offense of driving after revocation, Minn.St. 171.24, and informed him that he would take him to the law enforcement center at Albert Lea.

Following a conversation about arrangements for the care of defendant's dog while he was in custody, Harig drove defendant to the house at which he was living so that he could drop off the dog. In order to keep defendant in custody, Harig, without either the express consent or objection of defendant, followed him into the house. While inside the house, defendant, after rummaging through a desk in the living room/bedroom, allegedly produced a pistol in a holster, threw down the holster, and pointed the weapon at Harig. Harig told defendant he was leaving but allegedly was stopped by defendant at the outside door in the kitchen and a scuffle ensued, with Harig wrestling the weapon from defendant and placing defendant under arrest for aggravated assault.

---

1. The trial court also suppressed evidence of any statements made by defendant between the time of the misdemeanor arrest and the time of the alleged assault on the ground of no *Miranda* warning and because it found the misdemeanor arrest to be illegal. We do not address the validity of that part of the order, since defendant has not been charged with driving after revocation. The statements are not specified in the order, and on this record we assume such evidence would be relevant only in a prosecution for the misdemeanor offense.

Harig apparently tried to put the pistol in the front of his pants, but it would not stay there properly. More concerned at the moment with adequately restraining defendant, Harig placed the pistol on the kitchen table and forcibly escorted defendant to the squad car, where, keeping him physically subdued, he radioed for help. When help arrived a short time later, Harig, accompanied by other officers, reentered the house and seized the pistol and a number of other related physical items in plain sight, specifically, defendant's jacket from the kitchen floor and from the living room/bedroom a box of ammunition from the top of the desk and the holster.

■ The issue raised by the state's appeal as narrowed on oral argument is whether the trial court erred in ordering the suppression of the weapon and jacket seized from the kitchen of defendant's dwelling shortly after his arrest on the aggravated assault charge.[2] In contending that the court did not err in suppressing this evidence, defendant argues that the initial warrantless arrest on the misdemeanor traffic offense was illegal and the evidence later seized was the fruit of an illegal arrest. Defendant also argues, alternatively, that even if it would have been proper for Harig to seize the evidence while he was in the house with defendant, once he left the house it was improper for him and the officers assisting him to reenter the house in order to seize the evidence.

We need not decide whether defendant's initial warrantless custodial arrest was illegal. Minn.St. 629.34(1) permits a warrantless custodial arrest for a misdemeanor offense only if the offense was committed in the "presence" of the arresting officer.

The standards to be used in determining whether the offense was committed in the presence of an officer are set forth in *State v. Pluth,* 157 Minn. 145, 195 N.W. 789 (1923), and *Smith v. Hubbard,* 253 Minn. 215, 91 N.W.2d 756 (1958).[3]

We do not believe that the challenged physical evidence seized shortly after the subsequent warrantless arrest on the assault charge should have been suppressed. Defendant's contention is that the evidence seized from the kitchen of his house was "fruit of the poisonous tree." Defendant's argument is basically a "but for" argument, specifically, that "but for" the custodial arrest which he asserts was illegal the alleged assault would never have occurred and that therefore any evidence seized in connection with his arrest on that charge is tainted by illegality resulting from the initial arrest.

While it may be true that "but for" the custodial arrest the alleged assault would not have occurred and there would have been no seizure of the physical evidence, it does not follow that we are required to suppress the physical evidence even though we assume, but do not decide, the illegality of the arrest. The test is "whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963). See, also, *State v. Weekes,* Minn., 250 N.W.2d 590, 595 (1977), analyzing and applying *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (confessions obtained by police dur-

2. The state conceded on oral argument that the box of ammunition and the holster seized from the bedroom should be suppressed.

3. Rule 6.01, subd. 1(1)(a), Rules of Criminal Procedure, provides: "By Arresting Officers. Law enforcement officers acting without a warrant, who have decided to proceed with prosecution, shall issue citations to persons subject to lawful arrest for misdemeanors, unless it reasonably appears to the officer that arrest or detention is necessary to prevent bodily harm to the accused or another or further criminal conduct, or that there is a substantial likelihood that the accused will fail to respond to a citation. The citation may be issued in lieu of an arrest, or if an arrest has been made, in lieu of continued detention. If the defendant is detained, the officer shall report to the court the reasons for the detention. Ordinarily, for misdemeanors not punishable by incarceration, a citation shall be issued if the accused signs the citation agreeing to appear as provided in Rule 6.01, subd. 3."

ing unlawful confinement following an illegal arrest). Numerous factors bear on the application of this test, including the temporal proximity of the illegality and the fruit of that illegality, the presence of intervening circumstances, and the purpose and flagrancy of the physical misconduct. This last factor is especially important, because the aim of the exclusionary rule is to deter police misconduct by removing the incentive to disregard constitutional guarantees.

Under the peculiar facts and circumstances of this case, the causal chain between the initial arrest and the physical evidence seized appears so attenuated that it would not serve the purpose of the exclusionary rule to exclude the evidence were we to decide that issue in defendant's favor. The scanty record [4] submitted on appeal indicates that the alleged assault was an intervening act of defendant's free will which dissipated any taint of an illegal custodial arrest [5] if there was one. More important is the fact that no intent to secure evidence motivated the decision to custodially arrest defendant on the misdemeanor charge.

█ The final matter that merits discussion is defendant's contention that once Officer Harig left the house with defendant he and assisting officers could not reenter to seize the physical evidence without first obtaining a warrant. There is no merit to this contention. Harig had a right to seize the items, which were in plain sight in the kitchen, as an incident of his arrest of defendant for an assault against his person. Since he was unable to seize them until he had subdued and secured defendant in the squad car, he had a right to reenter the house within a reasonable time to seize them. Here, the delay between Harig's leaving the house and reentering was insubstantial and was completely attributable to his actions in subduing and securing defendant in the squad car and waiting for assistance from a backup squad.

Reversed in part and remanded for trial.

---

4. Defendant did not testify at the omnibus hearing.

5. Cf. *Watkins v. State,* 350 So.2d 1384, 1387 (Miss.1977).