**COMMONWEALTH of Kentucky, Appellant**

v.

**Larry L. JOHNSON, Appellee.**

No. 2006–CA–002200–MR.

Court of Appeals of Kentucky.

Feb. 1, 2008.

---

Gregory D. Stumbo, Attorney General of Kentucky, James C. Shackelford, Assistant Attorney General, Frankfort, KY, for appellant.

Joe F. Childers, Lexington, KY, William Lewis Collins, Whitesburg, KY, for appellee.

Before THOMPSON, Judge; BUCKINGHAM and HENRY, Senior Judges.[1]

## OPINION

THOMPSON, Judge.

This case presents the question of whether an illegal entry into a residence by a police officer renders evidence of a subsequent assault against the officer inadmissible under the exclusionary rule. We hold that it does not and reverse.

Johnson was indicted for the offense of assault in the third degree "by intentionally causing or attempting to cause physical injury to Trooper Jon Allen, a Kentucky State Police Officer...." Johnson moved the court to dismiss the indictment on the basis that the officer's warrantless entry into his home and his subsequent arrest and search violated his rights under the Fourth Amendment to the United States Constitution, our Kentucky Constitution, and KRS 431.005. Following an evidentiary hearing, the circuit court found that the warrantless entry into the residence where Johnson was sleeping was illegal. It further concluded that had the officers not entered the residence illegally, the assault would not have occurred. On that basis, the court dismissed the indictment.

At the hearing, Trooper Allen testified as to the events which led to his physical encounter with Johnson. Trooper Allen and Sergeant Blake Stone were investigating a theft and were informed by two men that Johnson, Billy Deaton, and an unidentified man were observed acting suspiciously in the same area and at the same time that the theft was committed.

The officers went to Billy Deaton's residence to question Deaton. Trooper Allen knocked several times and identified himself as a police officer but received no response. The officers then observed an automobile in the driveway. With a flashlight, they looked into the car. At that time, the porch light came on and Deaton stood in the doorway of the residence yelling obscenities at the officers. Trooper Allen, in uniform, again identified himself as an officer and requested that Deaton exit the residence and respond to questions. Deaton then turned and ran back into the house.

Trooper Allen, who had previously been called to the residence in response to a domestic dispute and was aware that Dea-

1.  Senior Judges David C. Buckingham and Michael L. Henry sitting as Special Judges by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

ton had previously threatened law enforcement officers, testified that he believed that Deaton might retrieve a weapon from the residence. He testified that as a safety precaution, Trooper Allen and Sergeant Slone pursued Deaton into the residence where they gained control of him. When asked if anyone else was in the residence, Deaton informed them that Johnson was in the back bedroom.

Trooper Allen then proceeded to conduct "a security sweep of the house." At the hearing, Trooper Allen described the events that followed:

> I found Mr. Johnson in the rear bedroom of the residence. I identified myself as a state police. I even turned the light on in the residence. Mr. Johnson ignored my identification, ignored my request to get up. I identified myself again. Mr. Johnson lift[ed] up, took a swing at me striking me in the chin. And at that point in time, we engaged in a physical confrontation. Mr. Johnson was taken to the ground. I attempted several times to get him handcuffed with-I was able to get one cuff on him initially. Mr. Johnson kept trying to get into his left, front pants pocket with his left hand. I continued to try to get him handcuffed and, eventually, was able to do that. And Mr. Johnson was [charged with] Assault in the Third Degree Police Officer and Resisting Arrest. I searched Mr. Johnson after handcuffing him and a box cutter was taken from his front, left pocket and a set of brass knuckles was taken from a rear pants pocket.

Johnson was charged with assault in the third degree, resisting arrest, and carrying a concealed, deadly weapon. The grand jury returned an indictment only on the assault charge.

■ It is conceded by the Commonwealth and Johnson that even if the entry into the residence was illegal, the circuit court had no power to dismiss the indictment. A trial court's consideration of a motion to dismiss an indictment "[i]s limited to a determination of whether the indictment was valid on its face and whether it conformed to the requirements of RCr 6.10." *Hancock v. Commonwealth*, 998 S.W.2d 496, 498 (Ky.App.1998). An unlawful search or entry into a residence will justify a motion to suppress any evidence seized as a result of the entry but is not sufficient grounds upon which to dismiss an indictment. *Commonwealth v. Hagan*, 464 S.W.2d 261, 262 n. 1 (Ky.1971).

■ The proper procedure as suggested in *Hagan* would have been for Johnson to have filed a motion to suppress any evidence regarding the alleged assault. Nevertheless, we cannot justify expending another appeal by remanding the case to the trial court for the reconsideration of precisely the same facts. Thus, we consider the arguments presented as if initially raised in a motion to suppress.

The initial question which must be resolved is whether the exclusionary rule applies to all evidence, which includes Trooper Allen's testimony, that Johnson committed an assault on a police officer. If the rule does not apply, we do not need to decide whether the warrantless entry was legal.

There is an abundance of case law from other jurisdictions which have addressed the issue now presented. Although the courts have employed different reasoning, they have uniformly rejected motions to suppress evidence relating to the defendant's violence toward police officers subsequent to an unlawful warrantless entry or search and seizure. *See, e.g., United States v. Udey*, 748 F.2d 1231, 1240 (8th Cir.1984), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985); *United*

*States v. King*, 724 F.2d 253, 256 (1st Cir.1984); *United States v. Nooks*, 446 F.2d 1283, 1288 (5th Cir.1971), *cert. denied*, 404 U.S. 945, 92 S.Ct. 299, 30 L.Ed.2d 261 (1971); *People v. Pearson*, 150 Cal.App.2d 811, 815–19, 311 P.2d 142, 145–46 (1957); *People v. Klimek*, 101 Ill. App.3d 1, 6, 56 Ill.Dec. 403, 408, 427 N.E.2d 598, 603 (1981); *State v. Bale*, 267 N.W.2d 730, 732–33 (Minn.1978); *State v. Miller*, 282 N.C. 633, 194 S.E.2d 353, 358 (1973); *State v. Saavedra*, 396 N.W.2d 304, 305 (N.D.1986); *State v. Indvik*, 382 N.W.2d 623, 627–28 (N.D.1986); *State v. Townes*, 41 N.Y.2d 97, 100–03, 390 N.Y.S.2d 893, 896–98, 359 N.E.2d 402, 405–06 (1976); *State v. Burger*, 55 Or.App. 712, 639 P.2d 706, 707–08 (1982); *State v. Gaffney*, 36 Or.App. 105, 583 P.2d 582, 584 (1978); *State v. Miskimins*, 435 N.W.2d 217, 221–22 (S.D.1989); *State v. Aydelotte*, 35 Wash.App. 125, 665 P.2d 443, 448 (1983).

Some courts have refused to apply the exclusionary rule on the basis that the conduct of the defendant was a separate and distinct act from the illegal entry so that the causal chain was broken. *See e.g., Bale*, 267 N.W.2d at 733. In *United States v. Waupekenay*, 973 F.2d 1533 (10th Cir. 1992), the court used somewhat different reasoning. In that case, the court held that once the officers entered the residence and identified themselves that the defendant no longer had a reasonable expectation of privacy. "He obviously intended for the police to see him aim a semi-automatic weapon at them. Thus, he could not have had a legitimate expectation of privacy in that action." *Id.* at 1537. Other courts have held that the evidence of the subsequent crime was not an exploitation by the police of the illegal entry but was an independent crime for which the defendant is criminally responsible. *See United States v. Bailey*, 691 F.2d 1009 (11th Cir. 1982).

While we are in agreement with the various legal theories advanced for rejecting the application of the exclusionary rule to assaults on police officers who entered a residence illegally, we are most persuaded by the common-sense reasoning expressed by the Maine Supreme Court in *State v. Boilard*, 488 A.2d 1380 (Me.1985). Rejecting application of the exclusionary rule in a factual scenario similar to the present case, that court stated:

> Despite the illegality of the entry into Boilard's home, it is beyond question that the exclusionary rule does not extend to suppress evidence of independent crimes taking place as a reaction to an unlawful arrest or search. *State v. Kittleson*, 305 N.W.2d 787, 789 (Minn. 1981); *Commonwealth v. Saia*, 372 Mass. 53, 57–58, 360 N.E.2d 329, 332 (1977). We agree completely with the ruling of the Oregon Court of Appeals in *State v. Burger*, 55 Or.App. 712, 639 P.2d 706 (1982):

> We decline to hold that after an unlawful entry evidence of subsequent crimes committed against police officers must be suppressed. Such a rule would produce intolerable results. For example, a person who correctly believed that his home had been unlawfully entered by the police could respond with unlimited force and, under the exclusionary rule, could be effectively immunized from criminal responsibility for any action taken after that entry. We do not believe that either the state or federal constitution compels such a result. (citation omitted)

*Id.* 1386–1387.

It is evident from the enactment of KRS 508.025 that the legislature sought to protect law enforcement officers from violence while performing their public duty. Moreover, under KRS 520.090, the unlawfulness

of an arrest is not a defense to a prosecution for resisting arrest. *See, Baze v. Commonwealth,* 965 S.W.2d 817, 821 (Ky. 1997), *cert. denied,* 523 U.S. 1083, 118 S.Ct. 1536, 140 L.Ed.2d 685 (1998). We likewise find that the unlawfulness of an entry or search is not a defense to an assault on a police officer.

In conclusion, we hold that the trial court erred when it dismissed the indictment. Furthermore, evidence regarding the alleged assault by Johnson is not tainted by the illegal entry and is admissible at trial. The case is reversed and remanded for further proceedings consistent with this opinion.

ALL CONCUR.