RENDERED:  MARCH 27, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0734-MR

MARGARET EADS                                                      APPELLANT

v.
APPEAL FROM KENTON CIRCUIT COURT
HONORABLE MARY K. MOLLOY, JUDGE
ACTION NO. 23-CR-00268

COMMONWEALTH OF KENTUCKY                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND EASTON, JUDGES.

CALDWELL, JUDGE:  Margaret Eads ("Eads") appeals from the denial of her

motions to suppress evidence and to dismiss the indictment against her.  We

affirm.

## FACTS

Eads was charged with assault in the third degree after officers from the Kenton County Police Department ("KCPD") were dispatched to her home in Covington on New Year's Day of 2023.

On that evening, according to a uniform citation, officers were dispatched to Eads' home in reference to a disconnected 911 call. The citation indicated the officers observed that Eads was heavily intoxicated when they made contact with her upon their arrival, which prompted them to call Emergency Medical Services ("EMS"). Upon the arrival of EMS, emergency personnel deemed it necessary that Eads go to the hospital and be checked out because of her high level of intoxication. The citation indicated that the police officers then assisted EMS in escorting Eads from her residence to an outside ambulance. The citation also alleged that as the officers helped place Eads onto a cot, she punched one officer in his eye and then kicked another in his chest. Subsequently, per the citation, Eads was placed under arrest for two counts of assault in the third degree and transported to the Kenton County Detention Center ("KCDC").

Eads was thereafter indicted for two counts of assault in the third degree pursuant to KRS[1] 508.025, by a Kenton County grand jury in March of 2023. Following her indictment, Eads filed in the Kenton Circuit Court ("the trial

---

[1] Kentucky Revised Statutes.

court"), by counsel, a motion to suppress. The motion requested that the trial court suppress any evidence against her in the case. As grounds, Eads alleged that her arrest had occurred incidental to a warrantless entry by law enforcement into her residence where she was restrained and then forcibly removed from her own home by the officers, all of which she alleged had occurred in violation of her Fourth Amendment rights.

In a submitted response, the Commonwealth primarily argued that, pursuant to *Commonwealth v. Johnson*, 245 S.W.3d 821 (Ky. App. 2008), even if an unconstitutional entry *had* occurred, no application of the exclusionary rule was available for the subsequent crime of assaulting a police officer. Additionally, the Commonwealth argued that no violation of Eads' Fourth Amendment rights had occurred prior to or during her arrest as the KCPD officers had lawfully entered and maintained their presence in Eads' residence.

Thereafter, Eads additionally filed a motion to dismiss the indictment, pursuant to RCr[2] 8.18(1)(b). As grounds for this motion, Eads alleged that the Commonwealth of Kentucky ("the Commonwealth") had secured the indictment against her by presentation of material misstatements, misrepresentations, and omissions of evidence to the grand jury. Eads contended bodycam video taken by the responding officers at her residence established that KCPD Officer Fields had

---

[2] Kentucky Rules of Criminal Procedure.

-3-

made material misrepresentations of fact during his testimony before the grand jury. Eads alleged that Officer Fields had falsely testified to believing that Eads was a danger to herself and had falsely described as voluntary circumstances where Eads had been unconstitutionally detained and forcibly removed from her home against her will. But for this evidence, Eads insisted, no indictment against her would have issued from the grand jury.

The Commonwealth filed a response arguing that Eads had merely alleged that false testimony before the grand jury had occurred. Even if it were true that incorrect information was supplied in grand jury testimony, the Commonwealth contended that Eads had not alleged sufficient grounds for the trial court to consider a motion to dismiss the indictment. It argued Eads had nowhere alleged that the Commonwealth had knowingly elicited any false testimony before the grand jury or that actual prejudice to Eads had occurred. Nevertheless, the Commonwealth asserted, Officer Fields had not rendered any false testimony to the grand jury. The Commonwealth characterized Eads' argument as merely a different interpretation of facts than the account of Officer Fields rather than demonstrating any material misrepresentation on his part.

The trial court held a hearing on both of the motions (the motion to suppress and the motion to dismiss the indictment). Memoranda on the motions had been submitted by both parties prior to the hearing. At the opening of the

hearing, there was some discussion as to whether Eads had withdrawn her motion to suppress evidence. Counsel for Eads acknowledged that the Commonwealth had submitted caselaw indicating that suppression of evidence was not available for an alleged Fourth Amendment violation where a defendant was charged with assault in the third-degree. However, counsel for Eads contended any such caselaw was inapplicable to her charges and that the motion to suppress had not been withdrawn.

Officer Fields was not subpoenaed to appear at the hearing. KCPD Officer Reiss, who was also present during the arrest of Eads, testified at the hearing. Officer Reiss testified that he had personally responded to two 911 calls made by Margaret Eads at her residence on January 1, 2023. On that evening, within an hour of starting his 6:00 p.m. shift, Officer Reiss was dispatched to Eads' residence in response to a 911 call. He testified that, at that time, Eads had reported a domestic dispute with her ex-boyfriend and alleged that he had stolen a gun from her home.

Officer Reiss testified that, upon their arrival to the residence shortly before 7:00 p.m., all responding officers noticed that Eads had been intoxicated. He testified her intoxication was apparent from her speech and that her condition made it quite difficult to discern from Eads exactly what had happened in the events which led to her 911 call. Nevertheless, Officer Reiss testified, he did not

-5-

assess Eads to be so severely intoxicated that she presented a danger to herself or others at that time. Before the officers had left the residence on this occasion, Officer Reiss testified, they had taken the report on the matter and advised Eads to call 911 immediately should the ex-boyfriend return.

According to his testimony, Officer Reiss was dispatched to Eads' residence for a second time that evening about an hour after he had left. The return was prompted after 911 dispatch received another call from Eads' number. This call was disconnected. A return call by police went directly to voicemail. Officer Reiss testified that the possibility that Eads' ex-boyfriend had returned while in possession of the stolen gun was a concern of the KCPD officers while returning to the residence.

Upon his return encounter with Eads, Officer Reiss indicated it was immediately apparent that her condition had noticeably worsened since the earlier contact with Eads. He testified that Eads had become so severely intoxicated that she could barely stand. He testified that Eads fell out of a chair in front of him while attempting to simply sit in it. Officer Reiss testified that Eads removed her clothes inappropriately and exposed her breasts to the officers on multiple occasions.

Officer Reiss testified that Eads had earlier told officers that she did not usually drink much. Furthermore, he found her accounts as to how much she

had had to drink and what sort of alcoholic spirits she had consumed to be conflicting and inconsistent. Despite her inconsistency, Officer Reiss testified, on multiple occasions Eads estimated the amount she had drank at two or more bottles. All of this raised concerns as to potential alcohol poisoning and the possibility that Eads might pass out in a position to suffocate in her own vomit if she were left alone, he testified.

Additionally, Officer Reiss testified the severely intoxicated state Eads was in had also raised concern for the safety of her son, who was also present in the home in his bedroom. Eads had reported to the officers that her son had autism. Officer Reiss testified that if Eads' son needed any help or care, Eads would have been completely unable to provide it in her severely intoxicated state. He indicated that KCPD officers had made phone calls in attempts for a friend or relative of Eads to come to the residence for the purpose of providing care and supervision to Eads' son while Eads was unable to do so.

Officer Reiss was not yet present on the scene when other KCPD officers first entered Eads' residence during the second dispatch to her home. He testified that when he arrived on the second occasion, other KCPD officers who had arrived just before him had already entered the residence when he followed into the open door. Nonetheless, Officer Reiss confirmed that he had reviewed the bodycam footage of Officer Fields, who had first made contact with Eads on the

second dispatch and was the first KCPD officer to enter the home. Officer Reiss testified that officers followed Eads inside just after she had asked them to speak with someone named "Charlie" whom she had on the line of her cell phone. Eads had handed Officer Fields her cell phone at the door and then entered her residence. Officer Fields was still speaking to "Charlie" on Eads' cell phone as she turned away. Officer Reiss testified that the bodycam footage showed the officers had simply followed Eads into the residence with Eads voicing no objection, at that time, to their entry.

Officer Reiss testified that in response to the officers' request, EMS arrived and evaluated Eads. After examining her, paramedics told Eads that she needed to go to the hospital because of her level of intoxication according to Officer Reiss. He also testified officers and EMS personnel attempted to persuade Eads to go outside and get in the ambulance. Eventually, Officer Reiss testified, the officers told Eads that she could go to the hospital in the ambulance or a police car, and threatened to place her in handcuffs if she would not cooperate. At this ultimatum, Officer Reiss testified, Eads said she would go with EMS. After this, with the assistance of officers to lift her to her feet and steady her as she walked, Eads eventually proceeded to walk outside uncuffed according to Officer Reiss.

Officer Reiss testified that Eads had been unable to walk on her own so after assisting her to her feet, he and Officer Fields had continued holding her

arms on either side of her and walked her from within the residence to the outside ambulance. He testified that after they reached the ambulance, the officers had assisted Eads onto the ambulance gurney. After she was seated in the gurney but before she could be lifted into the ambulance, Officer Reiss testified, Eads cursed at the officers and became suddenly combative.

At the moment Eads became suddenly aggressive, Officer Reiss testified, she had struck Officer Fields in the head with her closed fist. He recalled that Officer Fields first warned Eads to stop hitting him and advised her that she was committing a crime by doing so. Nevertheless, Officer Reiss testified, Eads then struck Officer Fields a second time with her closed fist. He described this blow as "ricochet[ing] off" from contact with Officer Fields' head and then striking him as well. Officer Reiss testified that a short time later Eads had also attempted to kick him in the chest, though the point of impact had been with his hand that he had been able to raise in an attempt to block her kick.

On cross-examination, Officer Reiss conceded that Eads had demanded the KCPD officers leave not long after they had entered her residence. He additionally conceded that no issue of a potential crime taking place had prompted the officers to remain in the home despite her demand. Pressed on why they stayed, Officer Reiss reiterated his testimony that by the time Eads had requested they leave, the officers had become concerned about her safety as well as

that of her son if she were left alone. The officers had been aware of her son's presence in the home since Eads mentioned it during their initial contact with her that evening, Officer Reiss testified. He conceded that he was not made aware of any specific vital sign taken by the EMTs which indicated Eads was in a state of medical emergency.

When asked during cross-examination whether he agreed that Officer Fields had said to Eads, "one way or another you are going to the hospital[,]" Officer Reiss could not recall the specific words but did not contest counsel's representation that Officer Fields could be heard making this statement in the body cam videos.

Following the testimony of Officer Reiss, the trial court scheduled deadlines for supplemental briefing on the motions that the parties requested to submit and agreed to view the video footage from the bodycams of the responding KCPD officers that evening.

Before the close of the hearing, the trial court heard some additional arguments by counsel. Counsel for Eads argued that the testimony during the hearing established that Eads was entitled to assert self-defense. Counsel conceded that self-defense would be unavailable as a defense to assault in the third degree, had Eads been resisting an arrest, even if the arrest were determined to be unlawful. However, counsel for Eads argued, Officer Reiss testified the officers

-10-

had *not* been effectuating arrest at the time of her alleged offense, but instead had detained and removed Eads from her own home against her will. Accordingly, her counsel argued, she was not barred from asserting self-defense. The Commonwealth maintained its position that Eads could not assert self-defense on charges of assaulting the police.

Following submission of the motions, the trial court denied each in separate orders ("Order Denying Motion to Suppress Evidence" and "Order Denying Motion to Dismiss Indictment"). The Order Denying Motion to Dismiss Indictment cross-referenced the Order Denying Motion to Suppress Evidence and incorporated its factual findings. As the stated grounds for denying Eads' motion to suppress evidence, the trial court concluded that the KCPD officers had acted reasonably under the circumstances and had not violated Eads' constitutional rights. As to the denial of Eads' motion to dismiss the indictment, the trial court found that neither Officer Fields nor the prosecution misrepresented the facts surrounding Eads' arrest during presentation of the case to the grand jury and concluded that no flagrant abuse of the grand jury process had taken place.

Subsequent to these orders, Eads entered a guilty plea made pursuant to the holding of *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), and expressly reserved the right to appeal her conviction. Following

entry of the plea, the trial court sentenced Eads to eighteen-months' incarceration, probated for three years.

This appeal follows. Additional facts will be developed as necessary.

## ANALYSIS

On direct appeal, Eads alleges the trial court erred by denying her motion to suppress as well as by denying her motion to dismiss the indictment. We address her arguments in turn.

### Trial Court Did Not Err By Denying Eads' Motion to Suppress.

We first address the denial of Eads' motion to suppress. Where a request for suppression of evidence was denied by the trial court, the standard for appellate review in Kentucky is well established:

> A trial court's denial of a motion to suppress is reviewed under a two-prong test. First, we review the trial court's findings of fact under the clearly erroneous standard. Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence. Second, we review *de novo* the trial court's application of the law to the facts.

*Adams v. Commonwealth*, 699 S.W.3d 757, 759 (Ky. App. 2024) (quoting *Rhoton v. Commonwealth*, 610 S.W.3d 273, 275-76 (Ky. 2020) (footnotes and citations omitted)).

In the Order Denying Motion to Suppress, there is no particular case cited, nor any particular doctrine identified by name, upon which the trial court

-12-

relied in concluding that no violation of the Fourth Amendment rights of Eads had occurred. On appeal, the parties continue to present arguments regarding the applicability of a number of exceptions to the warrant requirement. Neither party takes an explicit position to this Court as to which exception(s) to the warrant requirement were utilized in the Order Denying Motion to Suppress.

The sole charges for which Eads had been indicted were two counts of third-degree assault under KRS 508.025(1)(a)1., that she had "intentionally cause[d] or attempt[ed] to cause physical injury to" the two KCPD officers. Given the charges of assaulting the police, for reasons which follow, we veer from the analysis of the trial court. However, "it is well-settled that an appellate court may affirm a lower court for any reason supported by the record." *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009). Furthermore, we note here, we have examined the parties' briefs and have concluded matters raised therein that we have not addressed are without merit, irrelevant, or redundant. *See Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021).

We are sensitive to the Fourth Amendment issues implicated in the underlying facts of the case. Nowhere, however, does Eads allege that any evidence relevant to her case was acquired by law enforcement prior to the point in time at which she struck the officers. Under the undisputed facts of this case, with the only charges being for assault on uniformed police, it is unnecessary to

scrutinize the trial court's findings of facts or whether any warrantless entry or seizure here was barred by the Fourth Amendment.

### The Exclusionary Rule Could Not Apply To The Evidence Eads Sought To Exclude, Pursuant to *Commonwealth v. Johnson*.

Throughout proceedings before the trial court, the Commonwealth insisted that, under facts of the case which were not in dispute, Eads was barred from pursuing the suppression of evidence that she had committed an assault upon police, pursuant to *Commonwealth v. Johnson*, 245 S.W.3d 821 (Ky. App. 2008). As before the trial court, the Commonwealth continues to assert that, "even if entry into the home was illegal (which it was not), it is beyond question that the exclusionary rule does not extend to suppress evidence of independent crimes taking place as a reaction to an unlawful arrest or search." Appellee brief, p. 9 (citing *Johnson* at 824; *State v. Boilard*, 488 A.2d 1380, 1386-87 (Me. 1985)) (internal quotation marks omitted). Eads argued to the trial court that *Johnson* was distinguishable from her case and thus inapplicable. In her Reply brief, she reiterates the argument.

The trial court nowhere addressed the arguments concerning the applicability of *Johnson* in the Order Denying the Motion To Suppress. However, the holding in that case would have provided an avenue for abbreviated resolution of the suppression motion.

-14-

In *Johnson*, we reversed and remanded an order that suppressed all evidence of an assault upon police that had been based upon a trial court's agreement with the defendant "that had the officers not entered the residence illegally, the assault would not have occurred." 245 S.W.3d at 822. In reversing, we ruled consistently with other jurisdictions we noted had "uniformly rejected motions to suppress evidence relating to the defendant's violence toward police officers subsequent to an unlawful warrantless entry or search and seizure." *Id*. at 823. We held that, where a movant charged with assault on a peace officer seeks the suppression of evidence, an initial question for courts to resolve is whether the exclusionary rule would actually apply to the evidence in question, regardless of the legality of the entry. *Id*. "If the rule does not apply, we do not need to decide whether the warrantless entry was legal." *Id*. We held that, furthermore, it was "beyond question that the exclusionary rule does not extend to suppress evidence of independent crimes taking place as a reaction to an unlawful arrest or search." *Id*. at 824.

Eads' argument closely resembles the conclusion reached by the trial court in *Johnson* that was subject to reversal; essentially, she asserts "that had the officers not entered [her] residence illegally," detained and then required her to go to the hospital, "the assault would not have occurred." *Id*. at 822.

She contends that "[b]efore any alleged crime ever occurred, [she] was forcibly removed from her home against her will, while not under arrest, because officers claimed to be concerned about her safety." Appellant brief, p. 5. Accordingly, she maintains that striking the officers "was not in fact a crime – based upon the fact that they had no probable cause to be doing what they were doing in the first place."

Eads argues her case is distinguishable from *Johnson* factually. First, she argues that the officer in *Johnson* who entered a residence illegally nonetheless "had probable cause to detain and arrest the Defendant" as the result of "an actual unprovoked assault" which she characterizes as all taking place *prior* to any attempt by the officer to detain the defendant. Reply brief, p. 5. She argues her own striking of officers is distinct because it took place only *subsequent* to her being detained by the officers. We are unpersuaded that Eads' attempt to distinguish the facts of her attack on the police sequentially from that in *Johnson* renders the case inapplicable.

Recognizing our determination in *Johnson* that "the exclusionary rule does not extend to suppress evidence of independent crimes taking place *as a reaction* to an unlawful arrest or search[,]" Eads attempts to distinguish her case with her allegation that she struck the officers while she was being unlawfully detained by them rather than while being placed under arrest or subject to a search

by them. *See* 245 S.W.3d at 824 (quoting *State v. Boilard*, 488 A.2d 1380 (Me. 1985)) (emphasis added). Elsewhere, in a related argument, Eads concedes she would be barred from asserting self-defense for striking the officers had she done so in resistance to being unlawfully *arrested* under otherwise identical facts. However, she insists that assertion of self-defense remains a viable justification for assaulting the police if the force is used in resistance to being unlawfully *detained*.

In support of these arguments, Eads makes no attempt to distinguish her case from binding opinions which have reaffirmed *Johnson*. This is a significant oversight, as this Court has held that "[w]hether or not an officer's actions constitute an illegal search, arrest *or detention*, our courts reject applying the exclusionary rule to prohibit evidence of a crime that takes place after such a prior illegality." *Constant v. Commonwealth*, 603 S.W.3d 654, 661 (Ky. App. 2020) (quoting *Pulley v. Commonwealth*, 481 S.W.3d 520, 528 (Ky. App. 2016)).

In *Pulley*, this Court reaffirmed *Johnson* and determined that the exclusionary rule would likewise not apply to suppress evidence of independent crimes committed while a defendant was unlawfully detained. 481 S.W.3d at 528-29.

> Even if Pulley continued to be improperly detained at the time he committed a crime, he would not be entitled to suppression of the evidence of this crime. Whether or not an officer's actions constitute an illegal search, arrest *or detention*, our courts reject applying the exclusionary

-17-

> rule to prohibit evidence of a crime that takes place after such a prior illegality.

*Id.* at 528 (emphasis added).

In a related argument, Eads appears to maintain that *Johnson* is inapplicable where a criminal defendant has been detained following an unlawful entry into a private residence by police. However, in *Constant*, we held that, even if a defendant's initial detention within an arrestee's home had been unlawful, the exclusionary rule would not apply to evidence of his fleeing or evading and possession of a controlled substance. 603 S.W.3d at 659. Consequently, we also reject Eads' assertion that, under the undisputed facts at hand, the police's allegedly unconstitutional detainment of her person or entry into her residence could render the exclusionary rule applicable.

Eads' attempts to distinguish her case all fail because her assault of the police officers here was an *intervening* act occurring *subsequent* to any alleged Fourth Amendment violation. In *Kavanaugh v. Commonwealth*, our Supreme Court concluded that, despite its reservations as to the reasonableness of a stop and frisk, the defendant's assault upon the police officer who was conducting the frisk "constituted an intervening act that purged the taint, if any, that resulted from any detention which may have violated the Fourth Amendment." 427 S.W.3d 178, 181 (Ky. 2014). "Once this assault occurred, [the police officer] unquestionably had

probable cause to arrest [the defendant]." *Id.* We view this principle as no less applicable to Eads' assault upon the police officers in this case.

**Self-Defense was Procedurally Unavailable to Eads**.

Eads' attempts to distinguish her case from *Johnson* rely upon her incorrect argument that an assertion of self-defense was available to her under the undisputed facts. In *Johnson*, this Court highlighted some statutory protections afforded to law enforcement, including the explicit unavailability of certain defenses for resisting arrest:

> It is evident from the enactment of KRS 508.025 that the legislature sought to protect law enforcement officers from violence while performing their public duty. Moreover, under KRS 520.090, the unlawfulness of an arrest is not a defense to a prosecution for resisting arrest.
>
> . . .
>
> We likewise find that the unlawfulness of an entry or search is not a defense to an assault on a police officer.

245 S.W.3d at 824–25.

Eads alleges she was resisting an unlawful detainment and that, accordingly, the right to assert self-defense in her case remained available. An examination of further instances where the legislature sought to protect law enforcement officers from violence while performing their public duty establishes that, under undisputed facts of her case, this is incorrect.

-19-

This Court has stated that a defendant, such as Eads, who has been charged under KRS 508.025(1)(a)1., "may assert any defense, such as self-defense, *that may be available.*" *Randolph v. Commonwealth*, 566 S.W.3d 576, 578 (Ky. App. 2018) (citing *Covington v. Commonwealth*, 849 S.W.2d 560, 562 (Ky. App. 1992)) (emphasis added). Nevertheless, the procedural availability of self-defense for criminal defendants has been codified by the legislature within the Kentucky Penal Code, Chapter 503, General Principles of Justification (KRS 503.010 to 503.120). And an examination of those statutes demonstrates there are broad limitations to the availability of self-defense where a defendant has been charged with assault in the third degree.

The use of physical force upon another person, pursuant to KRS 503.050(1), is justifiable "when the defendant believes that such force is necessary to protect himself against the use or imminent use of unlawful physical force by the other person." Justification will provide a defense for an offense in any prosecution. KRS 503.020. Turning to KRS 503.085(1), we encounter another instance where the legislature sought to protect law enforcement officers from violence while performing their public duty. There, a defendant is deemed justified and immune from criminal prosecution for the use of such force as set forth in KRS 503.050, "*unless* the person against whom the force was used is a peace officer" acting in the performance of official duties and who has "identified

-20-

himself or herself in accordance with any applicable law[.]" KRS 503.085(1) (emphasis added).

Here, there is no dispute that the KCPD officers were acting in the performance of their official duties. There is no dispute they had identified themselves as such to Eads prior to the events which resulted in her arrest. Accordingly, under the undisputed facts of the case, the assertion of self-defense, pursuant to KRS 503.050(1) was not available to Eads.

The protection extended to law enforcement acting in the performance of official duties in KRS 503.085 extends to additional statutes within Chapter 503, where use of force might otherwise be deemed justified and provide a defense. Pertinent to Eads' allegations is KRS 503.055, which concerns the "Use of Defensive Force Regarding Dwelling, Residence, or Occupied Vehicle[.]" Therein, KRS 503.055(1)(a) concerns the use of defensive force against someone who "had removed or was attempting to remove another against that person's will from the dwelling [or] residence[.]" Additionally, KRS 503.055(1)(b) addresses the use of defensive force regarding a residence where the person utilizing the force "knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred."

However, the exception for the use of force against a peace officer performing official duties in KRS 503.085(1) explicitly bars Eads from the

-21-

assertion of any defense which might be otherwise available under KRS 503.055.

Moreover, within KRS 503.055 itself we encounter additional protection the legislature has afforded law enforcement acting in the performance of official duties. KRS 503.055(2)(d) specifies that the use of force which is otherwise permissible in the statute is unavailable where the person against whom defensive force is used is:

> a peace officer . . . who enters or attempts to enter a dwelling, residence, or vehicle in the performance of his or her official duties, and the officer identified himself or herself in accordance with any applicable law or the person using force knew or reasonably should have known that the person entering or attempting to enter was a peace officer.

It is undisputed that Eads knew that Officer Fields and Officer Reiss were peace officers when she hit and kicked them. Furthermore, it is clear that, along with application of the reasoning in *Johnson*, the statutory framework for the assertion of self-defense was unavailable to Eads.

We agree with the Commonwealth that, even if Eads' Fourth Amendment rights were violated, both the exclusionary rule and the assertion of self-defense were unavailable to her. Consequently, we discern no abuse of discretion in the trial court's denial of her motion to suppress.

**The Trial Court Did Not Err By Denying Eads' Motion To Dismiss Indictment**.

For Eads' second argument on appeal, she asserts that the trial court erred in denying her motion to dismiss the indictment. Where we review a trial court's determination upon a request for dismissal of an indictment, we review for an abuse of discretion. *Commonwealth v. Baker*, 11 S.W.3d 585, 590 (Ky. App. 2000). Accordingly, we are tasked with determining whether the trial court's decision was arbitrary, unreasonable, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941 (Ky. 1999).

Because of the strong presumption of regularity that attaches to grand jury proceedings, courts are extremely reluctant to scrutinize them. *Haney v. Commonwealth*, 653 S.W.3d 559, 569 (Ky. 2022) (citing *Baker*, 11 S.W.3d at 590). However, while "[d]ismissal of an indictment is an extreme sanction that should be infrequently utilized[,]" a trial court in Kentucky maintains "an inherent supervisory power to protect the integrity of the judicial process from fraud and bad faith conduct." *Baker*, 11 S.W.3d at 590 (internal quotation marks and citations omitted).

Where certain circumstances of prosecutorial misconduct are present, a trial judge may be permitted to dismiss criminal indictments in the pre-trial stage. *Commonwealth v. Hill*, 228 S.W.3d 15, 17 (Ky. App. 2007). Nevertheless, "before a court will invade the province of the grand jury, a defendant must demonstrate a

flagrant abuse of the grand jury process that resulted in actual prejudice and deprived the grand jury of autonomous and unbiased judgment." *Stopher v. Commonwealth*, 57 S.W.3d 787, 794 (Ky. 2001) (citing *Baker*, 11 S.W.3d at 588). A mere allegation of flagrant abuse of the grand jury process, absent a showing of actual prejudice, is insufficient grounds for a trial court to order the dismissal of an indictment. *Baker*, 11 S.W.3d at 588.

Eads alleges Officer Fields rendered false testimony before the grand jury to secure her indictment by making the following statements:

> Q. Could you tell us about the events that led her to be charged with two counts of assault in the third-degree?
>
> A. Sure. We responded to her house . . . there was a 911 disconnect call. We responded to her house she met me at the front door. Margaret Eads was extremely intoxicated to the point that we believe[d] that she was a danger to herself, and possibly the effects of whatever may happen because of the alcohol intoxication. We called for the squad to have her transported to the hospital, convinced her to go out to the squad . . . me and another officer walked her out put her down on the cot. As we were helping the squad put her into the cot, she punched me in the left eye . . . that ricocheted and hit my partner officer, and then she was put into handcuffs, and then during the process of trying to get her back on the cot she then started kicking and kicked my partner officer. So, then she was taken to KCDC.

Specifically, Eads alleges that Officer Fields' testimony that he and the other officers had "believe[d] that [Eads] was a danger to herself[,]" "convinced her to go to the squad[,]" "walked her out [and] put her down on the

cot[,]" and "help[ed] the squad put her into the cot" were all false and misleading statements which each amounted to a material misrepresentation.

The trial court concluded that Eads had demonstrated no flagrant abuse of the grand jury process had occurred after finding that neither Officer Fields nor the prosecution had misrepresented the facts surrounding the arrest of Eads to the grand jury. In the Order Denying Motion to Dismiss Indictment, the trial court supported this conclusion with reference to its finding that Officer Fields did not misrepresent the facts surrounding the arrest of Eads during his testimony. That Order incorporated the factual findings of the trial court's Order Denying Motion to Suppress, where it made factual findings and concluded that those findings supported the testimony of Officer Fields. Order Denying Motion to Suppress, p. 4.

A flagrant abuse of the process occurs where *a prosecutor* knowingly or intentionally presents false, misleading or perjured testimony to the grand jury. *Baker*, 11 S.W.3d at 588. The trial court's Order included an explicit finding that neither Officer Fields nor the prosecution had misrepresented the facts surrounding the arrest of Eads to the grand jury. However, as the Commonwealth points out, Eads never made a direct allegation that the prosecution *had* knowingly or intentionally elicited any false testimony. To this Court, as she argued to the trial court, Eads insists it was unnecessary to allege any knowing or intentional

-25-

presentation of false testimony on the part of the prosecutor. She contends that, because the witness in question was a police officer, constructive knowledge of the allegedly false testimony must be imputed to the Commonwealth.

In support of this contention, Eads quotes our Supreme Court's statement in *Trigg v. Commonwealth* that, "[w]e have held that when a testifying law enforcement officer knows of a significant statement that was made, that knowledge is properly imputed to the Commonwealth, regardless of whether the prosecuting attorney had actual knowledge of the statement." 460 S.W.3d 322, 326 (Ky. 2015) (citing *Anderson v. Commonwealth*, 864 S.W.2d 909, 912 (Ky. 1993)). We reject Eads' argument that this holding is applicable to a trial court's analysis of a motion to dismiss an indictment for flagrant abuse of the grand jury process.

No decision on a motion to dismiss the indictment was under consideration in *Trigg*; that case concerned an unintended discovery violation that came to light only upon "a sudden, mid-trial revelation" during a police officer's testimony that the defendant had made a statement to him that was "tantamount to a confession" and which had not been disclosed during discovery. 460 S.W.3d at 327. The *Trigg* Court held that under those facts, the Commonwealth could not "claim ignorance in order to avoid an RCr 7.24(1) violation." *Id.* at 326. We see no applicability of *Trigg* in relieving the movant of the burden to demonstrate the

prosecution *knowingly* or *intentionally* presented false, misleading or perjured testimony before a trial court may consider dismissing an indictment. We agree with the Commonwealth that the trial court could have denied the motion to dismiss the indictment for insufficient allegations as to the prosecution, pursuant to *Baker*, 11 S.W.3d at 588.

Additionally, to meet her burden, Eads was required to demonstrate actual prejudice, *i.e.*, "that the indictment would not have been issued except for the perjured testimony[.]" *Baker*, 11 S.W.3d at 589 (quoting *United States v. Roth*, 777 F.2d 1200, 1204 (7th Cir. 1985)). Eads makes a cursory assertion that, but for the allegedly false testimony, the grand jury would not have indicted her. However, she offers little in the way of an attempt to demonstrate that she satisfied this requirement before the trial court.

It might be inferred that Eads has incorporated her argument that a Fourth Amendment violation by the KCPD officers should provide her with a defense to assaulting a police officer. The particular testimonial statements that Eads alleges were false all related closely to issues pertinent to her argument for suppression. While Eads asserts that Officer Fields' grand jury testimony is disproven by the bodycam videos, she offers little assertion as to why the grand jury would not have indicted her for assaulting a police officer if, for example, Officer Fields had detailed the ultimatum the KCPD officers had given Eads in

order to "convince" her to go to the outside ambulance. As the Commonwealth points out, by entry of her *Alford* plea, Eads acknowledged that there was sufficient evidence to indicate guilt and that she had made a determination that her interests were best served by a plea of guilty.

The trial court did not address the parties' arguments as to the element of actual prejudice in the Order Denying Motion to Dismiss Indictment.

In sum, we affirm the trial court's denial of the motion to dismiss indictment and find no abuse of discretion in its conclusion that Eads had not demonstrated a flagrant abuse of the grand jury process.

## CONCLUSION

For the foregoing reasons, the order of the Kenton Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Paul J. Dickman
Covington, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky